**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**AT FORT MYERS**

| | |
|---|---|
| ZSR PATLAYICI SANAYI A.S., | |
| Plaintiff, | CASE NO.  2:19-cv-00864-SPC-MRM |
| v. | |
| MATTHEW SARAC, | |
| SARAC DISTRIBUTORS LLC, | |
| And YAVEX LLC, | |
| Defendants. | |

## DEFENDANTS' AMENDED ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIM AND JURY DEMAND

Defendants Matthew Sarac, Sarac Distributors LLC, and Yavex LLC (collectively "Defendants"), by and through their attorneys, hereby Answer the First Amended Complaint filed by Plaintiff, ZSR Patlayici Sanayi A.S. ("Plaintiff" and/or "ZSR").  Defendants deny all allegations contained in the section headings or other portions of the First Amended Complaint that are not contained within the specifically numbered paragraphs of the Complaint.  All allegations if not expressly admitted, are denied.  Defendants, by way of answer to the enumerated paragraphs of the First Amended Complaint, say:

### I.      THE PARTIES

1.      Defendants admit that Plaintiff is a company located in Turkey.  Defendants are without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 1 of Plaintiff's First Amended Complaint, and, on that basis, deny such allegations in this paragraph.

1

2.      Defendants deny the truth of the allegations contained in paragraph 2 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

3.      Defendants are without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of Plaintiff's First Amended Complaint, and on that basis, deny such allegations in this paragraph and refer all questions of law to this Honorable Court. Answering further, Defendants deny the legality of the alleged acquisition.

4.      Defendants are without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of Plaintiff's First Amended Complaint, and on that basis, deny such allegations in this paragraph and refer all questions of law to this Honorable Court. Answering further, Defendants deny the legality of the alleged acquisition.

5.      Defendants admit that Matt Sarac ("Mr. Sarac") resides in Lee County, Florida. Defendants deny all remaining allegations in paragraph 5 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

6.      Defendants admit that Sarac Distributors is a limited liability company organized and existing under the laws of Florida and located at the address pled.

7.      Defendants deny the truth of the allegations in paragraph 7 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

8.      Defendants admit that Yavex is a limited liability company organized and existing under the laws of Florida and located at the address pled.  Defendants deny all remaining allegations in paragraph 8 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

9.      Defendants deny the truth of the allegations in paragraph 9 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

## II.     NATURE OF ACTION

10.     In response to paragraph 10 of Plaintiff's First Amended Complaint, Defendants admit that Plaintiff has asserted claims for breach of contract and promissory estoppel, but deny the validity of these claims and/or that Plaintiff is entitled to any relief or judgment against Defendants.

## III.     JURISDICTION AND VENUE

11.     In response to paragraph 11 of Plaintiff's First Amended Complaint, Defendants admit that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) and that Plaintiff seeks damages in excess of $75,000, but deny that Plaintiff is entitled to any such damages from Defendants.

12.     Defendants admit that Sarac Distributors conducts business in Florida and maintains an office in Florida.  Defendants deny all remaining allegations in paragraph 12 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

13.     Defendants admit that Yavex conducts business in Florida and maintains an office in Florida.  Defendants deny all remaining allegations in paragraph 13 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

14.     Defendants admit that Mr. Sarac conducts business in Florida and maintains an office in Florida.  Defendants deny all remaining allegations in paragraph 14 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

15.     Defendants admit venue is proper in this District.  Defendants also admit that the events and/or actions at issue in the operative Complaint occurred in this District in Florida. Defendants deny all remaining allegations in paragraph 15 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

## IV.      THE CONTROVERSY

### A.  Background

16.      Defendants are without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of Plaintiff's First Amended Complaint, and on that basis, deny such allegations in this paragraph and refer all questions of law to this Honorable Court.

17.      Defendants admit they, directly or through their independent companies, have engaged in the importation, distribution, and sales of firearms and/or ammunition.

18.      Defendants deny the truth of the allegations contained in paragraph 18 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

19.      Defendants deny the truth of the allegations contained in paragraph 19 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

20.      Defendants deny the truth of the allegations contained in paragraph 20 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

21.      Defendants deny the truth of the allegations contained in paragraph 21 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

### B.  Nature and Terms of the Parties' Agreement

22.      Defendants deny the truth of the allegations contained in paragraph 22 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering further, Defendants specifically deny any allegations of a valid and enforceable agreement that are stated or implied in this paragraph.

23.      Defendants deny the truth of the allegations contained in paragraph 23 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering

further, Defendants specifically deny any allegations of a valid and enforceable agreement that are stated or implied in this paragraph.

24.     Defendants deny the truth of the allegations contained in paragraph 24 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering further, Defendants specifically deny any allegations of a valid and enforceable agreement that are stated or implied in this paragraph.

25.     Defendants admit that Admitted that a payment was made to Yavaşçalar A.S. Defendants deny that this payment in any way relates to any agreement, settlement or contract with Yavaşçalar A.S. Defendants deny the truth of the remaining allegations contained in paragraph 25 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering further, Defendants specifically deny any allegations of a valid and enforceable agreement that are stated or implied in this paragraph.

26.     Defendants deny the truth of the allegations contained in paragraph 26 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering further, Defendants specifically deny any allegations of a valid and enforceable agreement that are stated or implied in this paragraph.

27.     Defendants admit that Mr. Sarac engaged in multiple e-mail correspondence with Ismail Yavasca, including one or more emails on or around June 16, 2016.  Defendants deny the truth of the remaining allegations contained in paragraph 27 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering further, Defendants specifically deny any allegations of a valid and enforceable agreement that are stated or implied in this paragraph.

28.     Defendants admit that Mr. Sarac engaged in multiple e-mail correspondence, including one or more emails on or around April 4, 2017 regarding payments. Defendants deny the truth of the remaining allegations contained in paragraph 28 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering further, Defendants specifically deny any allegations of a valid and enforceable agreement that are stated or implied in this paragraph.

29.     Defendants deny the truth of the allegations contained in paragraph 29 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering further, Defendants specifically deny any allegations of a valid and enforceable agreement that are stated or implied in this paragraph.

30.     Defendants deny the truth of the allegations contained in paragraph 30 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering further, Defendants specifically deny any allegations of a valid and enforceable agreement that are stated or implied in this paragraph.

31.     Defendants deny the truth of the allegations contained in paragraph 31 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering further, Defendants specifically deny any allegations of a valid and enforceable agreement that are stated or implied in this paragraph.

**C. Mr. Sarac's Operation of SD and Yavex as Alter Egos**

32.     Admitted that Matthew Sarac formed Sarac Distributors and Yavex.

33.     Defendants deny the truth of the allegations in paragraph 33 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

34.     Admitted that Sarac Distributors and Yavex maintained and/or maintained a primary place of business at the same address.

35.     Defendants deny the truth of the allegations in paragraph 35 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

36.     Defendants deny the truth of the allegations in paragraph 36 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

37.     Defendants deny the truth of the allegations in paragraph 37 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

38.     Defendants deny the truth of the allegations in paragraph 38 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

39.     Defendants deny the truth of the allegations in paragraph 39 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

40.     Defendants deny the truth of the allegations in paragraph 40 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

41.     Defendants deny the truth of the allegations in paragraph 41 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

42.     Defendants deny the truth of the allegations in paragraph 42 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

43.     Defendants deny the truth of the allegations in paragraph 43 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

44.     Defendants deny the truth of the allegations in paragraph 44 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

45.     Defendants deny the truth of the allegations in paragraph 45 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

46.     Defendants deny the truth of the allegations in paragraph 46 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

47.     Defendants deny the truth of the allegations in paragraph 47 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

48.     Defendants deny the truth of the allegations in paragraph 48 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.  Answering further, Defendants explicitly deny that Mr. Sarac intended to pay, or did lay, any amounts at issue in this matter from own funds.

49.     Defendants deny the truth of the allegations in paragraph 49 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

50.     Defendants deny the truth of the allegations in paragraph 50 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering further Defendants explicitly deny any and all alter ego, piercing of the corporate veil, or personal liability allegations against Mr. Sarac, stated in implied herein.

## V.     CAUSES OF ACTION

### Count One: Breach of Contract

51.     Defendants hereby incorporate fully by reference their responses to paragraphs 1 through 50 as though expressly repeated herein.  Any other allegation is denied.

52.     Defendants deny the truth of the allegations contained in paragraph 52 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering

further, Defendants specifically deny any allegations of a valid and enforceable agreement that are stated or implied in this paragraph.

53.     Defendants deny the truth of the allegations contained in paragraph 53 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering further, Defendants specifically deny any allegations of a valid and enforceable agreement that are stated or implied in this paragraph.

54.     Defendants deny the truth of the allegations contained in paragraph 54 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering further, Defendants specifically deny any allegations of a valid and enforceable agreement that are stated or implied in this paragraph.

55.     Plaintiff admits to making past payments to Yavaşçalar A.S. Defendants deny the truth of the remaining allegations contained in paragraph 55 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering further, Defendants specifically deny any allegations of a valid and enforceable agreement that are stated or implied in this paragraph.

56.     Defendants deny the truth of the allegations contained in paragraph 56 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering further, Defendants specifically deny any allegations of a valid and enforceable agreement that are stated or implied in this paragraph.

57.     Defendants deny the truth of the allegations contained in paragraph 57 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering further, Defendants specifically deny any allegations of a valid and enforceable agreement that are stated or implied in this paragraph.

58.     Defendants deny the truth of the allegations contained in paragraph 58 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering further, Defendants specifically deny any allegations of a valid and enforceable agreement that are stated or implied in this paragraph.

59.     Defendants deny the truth of the allegations in paragraph 59 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering further Defendants explicitly deny any and all alter ego, piercing of the corporate veil, or personal liability allegations against Mr. Sarac, stated in implied herein.

**WHEREFORE**, Defendants hereby demand judgment in their favor, together with costs of suit, attorney's fees and interest, and any other relief the Court and/or jury deems just and proper.

## Count Two: Promissory Estoppel

60.     Defendants hereby incorporate fully by reference their responses to paragraphs 1 through 59 as though expressly repeated herein.  Any other allegation is denied.

61.     Defendants deny the truth of the allegations contained in paragraph 61 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

62.     Defendants deny the truth of the allegations contained in paragraph 62 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

63.     Defendants deny the truth of the allegations contained in paragraph 63 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

64.     Plaintiff admits to making past payments to Yavaşçalar A.S. Defendants deny the truth of the remaining allegations contained in paragraph 64 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

65.     Defendants deny the truth of the allegations contained in paragraph 65of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

66.     Defendants deny the truth of the allegations contained in paragraph 66 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

67.     Defendants deny the truth of the allegations contained in paragraph 67 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

68.     Defendants deny the truth of the allegations contained in paragraph 68 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court.

69.     Defendants deny the truth of the allegations in paragraph 69 of Plaintiff's First Amended Complaint and refer all questions of law to this Honorable Court. Answering further Defendants explicitly deny any and all alter ego, piercing of the corporate veil, or personal liability allegations against Mr. Sarac, stated in implied herein.

**WHEREFORE**, Defendants hereby demand judgment in their favor, together with costs of suit, attorney's fees and interest, and any other relief the Court and/or jury deems just and proper.

## VI.     REQUEST FOR RELIEF

70.     Defendants deny that Plaintiff is entitled to any of the relief asserted and/or requested in Plaintiff's unenumerated section entitled "Request for Relief" and refer all questions of law to this Honorable Court.

**WHEREFORE**, Defendants hereby demand judgment in their favor, together with costs of suit, attorney's fees and interest, and any other relief the Court and/or jury deems just and proper.

## COUNTERCLAIM

71.     Yavaşçalar A.S. exported numerous shipments of "Yavex" brand ammunition to Sarac Distributors, Yavex LLC and/or non-party 4T USA, LLC.

72.     Sarac Distributors marketed and attempted to sell much of the "Yavex" brand ammunition over the course of several years after receipt.

73.     Unbeknownst to Sarac Distributors, the "Yavex" brand ammunition received from Yavaşçalar A.S. suffered from poor and/or substandard quality, which impacted its value, desirability and salability.

74.     Defendants did not learn of the poor and/or substandard quality the "Yavex" brand ammunition until attempting to sell the ammunition.

75.     The "Yavex" brand ammunition was not manufactured to industry quality standards.

76.     The "Yavex" brand ammunition was not manufactured to SAAMI[1] standards for design, quality, pressure and/or velocity or any other standard acceptable to American consumers.

77.     Under information and belief, in lieu of using the commonly-accepted production and quality standards, Yavaşçalar A.S. instead manufactured the ammunition using NATO standards – a military grade not permissible and/or acceptable to American consumers.

78.     The "Yavex" brand ammunition was manufactured with inconsistent powder loads and inconsistent overall case lengths.

79.     Yavaşçalar A.S. also failed to track the lots of components used to produce the "Yavex" brand ammunition and failed to properly track the production of the finished ammunition.

80.     Yavaşçalar A.S. did not manufacture the ammunition in production lots, which also had a detrimental impact on Sarac Distributors' ability to sell and distribute "Yavex" brand ammunition in the United States.

---

[1] SAAMI, the Sporting Arms and Ammunition Manufacturers' Institute, was founded by the federal government in 1926 to create and publish industry standards for safety, interchangeability, reliability, and quality.  They promulgate technical, performance and safety standards for firearms, ammunition, and components.  Ammunition sold to consumers in the United States is expected to conform to SAAMI standards.

81.     As a result of the sub-standard and incorrect specifications and/or higher pressures and velocity of the "Yavex" brand ammunition, Sarac Distributors was forced to expend significant effort, time, and money to market and attempt to sell the ammunition.

82.     As a result of the sub-standard and incorrect specifications and/or higher pressures and velocity  of the "Yavex" brand ammunition, U.S. customers, including certain large ammunition manufacturers and retailers with whom Sarac regularly conducted business, including regular business for the "Yavex" brand ammunition, elected not to purchase the ammunition, greatly delayed their decisions whether to purchase the ammunition, and required Sarac Distributors to provide free samples of the ammunition for testing as a condition of purchase.

83.     As a result of the sub-standard and incorrect specifications and/or higher pressures and velocity  of the "Yavex" brand ammunition, U.S. customers, including certain large ammunition manufacturers and retailers with whom Sarac regularly conducted business, including regular business for the "Yavex" brand ammunition, elected to cease conducting business with Sarac Distributors.

84.     As a result of the sub-standard and incorrect specifications and/or higher pressures and velocity of the "Yavex" brand ammunition, Sarac Distributors had no choice and/or option but to sell the ammunition to smaller customers and discount distributors at a low price point, as some existing customers either reneged on agreements to purchase ammunition, and others required the product to be significantly discounted in order to complete purchase obligations.

85.     As a result of the inferior quality of the ammunition supplied by Plaintiff, Sarac Distributors suffered financial loss, decreased profits, loss of profits, and harm to the reputation of Sarac Distributors.

13

86.     The increased effort required of Sarac Distributors to attempt to market and sell the "Yavex" brand ammunition caused by the sub-standard and incorrect specifications and/or higher pressures and velocity of the ammunition, resulted in Sarac Distributors not being able to pursue and/or adequately and fully pursue other business ventures, which resulted in significant financial losses and damages to Sarac Distributors.

87.     Under information and belief, on multiple occasions, Yavaşçalar A.S. illegally and unlawfully shipped the "Yavex" brand ammunition in Yavex USA boxes to prohibited third parties, including banned and/or terroristic nations and groups.

88.     By way of example and not limitation, in one instance, border agents in Greece found "Yavex" brand ammunition packaged in Yavex USA boxes inside a disguised shipping container.  The shipment was en-route from Turkey to Libya.  The United Nations has imposed an embargo on weapons shipments to Libya; any such sale of ammunition to Libya is considered illegal smuggling.

89.     The illegal and unlawful shipments the "Yavex" brand ammunition in Yavex USA boxes was discovered and/or reported by various news agencies.  See e.g., https://uk.reuters.com/article/uk-libya-security-greece-arms/greek-coast-guard-seizes-libya-bound-ship-carrying-weapons-idUKKCN0R20UB20150902;       https://www.snopes.com/fact-check/greek-customs-weapons-refugees-furniture/.

90.     The illegal and unlawful shipments of the "Yavex" brand ammunition in Yavex USA boxes was also discovered and/or reported by internet forums, blogs, and chat rooms.

91.     The illegal and unlawful shipments the "Yavex" brand ammunition in Yavex USA boxes was also discovered by U.S. businesses and consumers.

92.     Defendants received backlash, public embarrassment and harm to their reputations as a result of the discovery and reporting of the illegal and unlawful shipments of the "Yavex" brand ammunition in Yavex USA boxes.

93.     As a result of the discovery and reporting of the illegal and unlawful shipments of the "Yavex" brand ammunition in Yavex USA boxes, Defendants received death threats, threats to their business and faced increased difficulty selling not only the Yavex ammunition, but also unrelated products sold by Sarac Distributors.

94.     Yavaşçalar's illegal and/or unlawful sales and shipment attempts caused Sarac Distributors and Mr. Sarac to suffer great financial loss, decreased profits, loss of business, loss of profits, harm to the Yavex USA brand, and harm to the reputation of Mr. Sarac and Sarac Distributors.

95.     On July 15, 2016, a coup d'état attempt occurred in Turkey against the government and President Recep Tayyip Erdoğan, allegedly orchestrated by a faction known as the Gülen movement.

96.     The coup attempt was unsuccessful, and to date over 160,000 people have been arrested upon suspicion of loyalty to the Gülen movement.

97.     Among those arrested as part of the coup d'état attempt, or as supports of the coup d'état attempt, was Ismail Yavaşça, owner and founder of Yavaşçalar.  He remains in jail indefinitely despite not having been brought to trial or convicted of any crimes.

98.     As a result of Mr. Yavaşça's arrest, Yavaşçalar A.S. was seized by the Turkish government.

99.     As a result of Mr. Yavaşça's arrest, and the reporting of his role and the potential role of Yavaşçalar A.S. in the coup d'état attempt, the "Yavex" brand and Defendants received

negative publicity which resulted in backlash, public embarrassment and harm to Defendants' reputations, and caused Sarac Distributor and Mr. Sarac to suffer great financial loss, decreased profits, loss of business, loss of profits, harm to the Yavex USA brand, and harm to the reputation of Mr. Sarac and Sarac Distributors.

100.    Plaintiff, through its Complaint in this matter, has claimed that it has acquired the rights and liabilities of Yavaşçalar A.S.

101.    Plaintiff as the claimed owner, purchaser, and legal successor to Yavaşçalar A.S. is legally responsible for the illegal, unlawful, intentional and/or tortious acts of Yavaşçalar A.S.

## COUNT I
## (TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS)

102.    Defendants hereby repeat each and every allegation contained in paragraphs 71 through 101 as if same were more fully set forth herein at length and verbatim.

103.    By reason of the conduct described above, Plaintiff, through Yavaşçalar A.S., tortiously interfered with Defendants' ability to conduct business, including maintaining existing contracts and orders for the sale of "Yavex" brand ammunition to certain large ammunition manufacturers and retailers in the United States.

104.    Plaintiff, through Yavaşçalar A.S., was aware of the existence of contractual and/or business relationships between Defendants and ongoing relationships with purchasers of "Yavex" brand ammunition, including certain large ammunition manufacturers and retailers in the U.S. to whom Defendants regularly sold ammunition and previously sold the "Yavex" brand ammunition.

105.    Plaintiff's actions, through Yavaşçalar A.S.,  of selling ammunition to Defendants that was not up to industry standard, including but not limited to its failure to track powder and other component lots and/or manufacture ammunition in lots, failure to produce ammunition with correct and consistent powder loads and measurements, as well as Plaintiff's actions of attempting

to illegally and/or unlawfully sell ammunition to prohibited buyers using the Yavex brand name, were done with the intention of inducing or causing, and/or with knowledge that it would induce or cause, purchasers of Yavex ammunition to breach their sales contracts and orders with Sarac Distributors.  As a direct result of these actions, certain large ammunition manufacturers and retailers with whom Defendants regularly sold ammunition, including "Yavex" brand ammunition, required price adjustments, refused further sales, ceased business with Defendants and/or agreed to purchase product only at liquidation prices.  Plaintiff's willful actions, through Yavaşçalar A.S., to tarnish the Yavex name and pass off inferior product constituted intentional interference with existing contracts for the sale of "Yavex" brand ammunition in the United States.

106.     Plaintiff, through Yavaşçalar A.S., has intentionally and without justification or privilege interfered with Sarac Distributors' existing sales contracts for the sale of Yavex ammunition in the United States by causing customers to not buy Yavex ammunition, causing customers to delay purchase decisions, and caused reduced profits by intentionally manufacturing ammunition not up to industry standard.

107.     Defendants' business relationships that were harmed as a result of Plaintiff's intentional, willful and unlawful misconduct described herein were with actual and identifiable customers and/or evidenced by actual agreements and product orders that, absent Plaintiff's wrongful conduct and interference, would have been completed.

108.     Plaintiff's actions through Yavaşçalar A.S., were not made in good faith, but rather were made with the knowledge and purpose to injure Defendants or with reckless disregard for the attendance consequences naturally, directly, and proximately resulting from such actions and without reasonable grounds for Plaintiff to believe that their actions were justified and proper.

109.    As a direct and proximate result of Plaintiff's intentional misconduct, Defendant Yavex LLC was forced to discontinue selling Yavex ammunition in the United States and Defendants suffered harm to their reputation and great financial loss, decreased profits, loss of business, loss of profits, due to certain large ammunition manufacturers and retailers with whom Defendants regularly sold ammunition refusing to purchase additional product, refusing to complete purchase obligations, requiring significant discounts, and/or requiring sample product for testing free of charge.

110.    Plaintiff and Yavaşçalar A.S. did not have any justification or privilege in causing damage to the Yavex brand and in causing its harm to Defendants.

111.    As a direct and proximate result of the foregoing, Defendants suffered damages in an amount to be proven at trial.

**WHEREFORE,** Defendants respectfully demand judgment in their favor and against Plaintiff, and request compensatory damages, special damages, interest, attorneys' fees and costs, and such additional and further relief this Court deems just and proper.

## COUNT II
## (TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS)

112.    Defendants reallege and reincorporate the allegations contained in paragraphs 71 through 101 above as if more fully set forth herein.

113.    By reason of the conduct described above, Plaintiff, through Yavaşçalar A.S., tortiously interfered with Defendants' ability to conduct business, including procuring new contracts for the sale of Yavaşçalar ammunition under the Yavex USA brand in the United States to certain existing customers with whom Defendants regularly sold ammunition, including certain large ammunition manufacturers and retailers.

114.    Defendants had ongoing advantageous business relationships with purchasers of ammunition in the United States, including certain large ammunition manufacturers and retailers.

115.    Defendants had advantageous business relationships with purchasers of other products they sell, including certain large firearms and shooting sports retailers in the United States.

116.    Plaintiff, through Yavaşçalar A.S., was aware of Defendants' intention to form new business and contractual relationships for the sale of "Yavex" ammunition.

117.    Plaintiff's actions have caused potential actual, real and identifiable purchasers of "Yavex" brand ammunition to decline a sales contract, refuse to purchase the ammunition, and caused existing purchasers of Yavex ammunition to decline additional sales contracts.  These potential purchasers would have otherwise purchased ammunition from Defendants, but for the issues with overall quality, inconsistent quality, and inadequate labeling experienced with the product these customers received bearing the Yavex name.

118.    Plaintiff, through Yavaşçalar A.S., has intentionally and without justification interfered with Defendants' relationships without any legal basis by causing harm to Defendants' reputation, ability to sell its "Yavex" brand ammunition, and ability to sell their other products to certain existing and identifiable customers with whom Defendants have regular business dealings.

119.    Plaintiff's actions, through Yavaşçalar A.S., were not made in good faith, but rather were made with the knowledge, purpose and intent to injure Defendants or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from such actions and without reasonable grounds for Plaintiff to believe that their actions were justified and proper.

120.    As a direct and proximate result of such intentional, reckless and/or willful misconduct, identifiable purchasers of "Yavex" brand ammunition, including certain large

ammunition manufacturers and retailers, have terminated agreements, failed to enter into agreements, cancelled and decreased orders, failed to purchase the ammunition and refused to purchase ammunition they had previously agreed to purchase.

121.    As a direct and proximate result of such intentional, reckless and/or willful misconduct, identifiable purchasers of Defendants' other products, including certain large firearms and sporting goods retailers, have terminated agreements, failed to enter into agreements, failed to purchase such products and refused to purchase such products despite previously agreeing to do so.

122.    Plaintiff and/or Yavaşçalar A.S. did not have any justification or privilege in procuring the breach of such business relationships.

123.    As a direct and proximate result of the foregoing, Defendants suffered damages in an amount to be proven at trial.

**WHEREFORE,** Defendants respectfully demand judgment in their favor and against Plaintiff, and request compensatory damages, special damages, interest, attorneys' fees and costs, and such additional and further relief this Court deems just and proper.

### COUNT III
### (BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY, VIOLATION OF FLA. STAT.  § 672.314)

124.    Defendants reallege and reincorporate the allegations contained in paragraphs 71 through 101 above as if more fully set forth herein.

125.    At all times mentioned herein, Plaintiff and/or its alleged successor-in-interest Yavaşçalar A.S. designed, manufactured, and sold "Yavex" brand ammunition to Sarac Distributors to be sold under the Yavex USA name.  In selling ammunition to Sarac Distributors for resale, Plaintiff warranted to Defendants that the ammunition was of quality and fit for the use

for which it was intended, that the ammunition was merchantable, would operate effectively, was manufactured according to industry standards, was safe for consumer use, was suitable for the ordinary and usual purposes for which it was intended, and would not create an unreasonable risk of injury to consumers.

126.    Sarac Distributors, in agreeing to purchase, distribute, and sell Yavaşçalar's ammunition in the United States under the Yavex USA brand, relied upon the skill and judgment of Yavaşçalar A.S.

127.    The "Yavex" brand ammunition sold to Defendants to be distributed in the United States was unfit for its intended use and was not of merchantable quality, as warranted by Plaintiff, through Yavaşçalar A.S., in that it was not manufactured to acceptable and/or correct standards, specifications and requirements; and was of an improper design and higher pressures and velocity than permitted by SAAMI and/or  U.S. ammunition standards.

128.    Due to being nonstandard ammunition, potential customers of the ammunition chose not to buy Yavex ammunition, to delay purchase decisions, and to require free samples to be provided for testing, all of which caused injury to Sarac Distributors.

129.    Due to being nonstandard ammunition, potential customers of the ammunition, Sarac Distributors was required to make sales to certain buyers, distributors and retailers at a price point below market value, which caused injury to Sarac Distributors.

130.    Plaintiff, through Yavaşçalar A.S., designed and manufactured the subject ammunition knowing and expecting the ammunition would be sold and distributed by Sarac Distributors in the United States under the "Yavex" brand.  By selling the subject ammunition to Sarac Distributors for sale and distribution in the United States, Plaintiff, through Yavaşçalar A.S., represented to Defendants that the subject ammunition was merchantable, would operate

effectively, was manufactured according to industry standards, was safe for consumer use, was suitable for the ordinary and usual purposes for which it was intended, and would not create an unreasonable risk of injury to consumers.

131.   Plaintiff, through Yavaşçalar A.S., was on notice of the breach of implied warranties at the time the subject ammunition was manufactured and sold to Sarac Distributors. Plaintiff knew, or should have known, that the ammunition was not manufactured to acceptable standards, as required for consumer-grade ammunition in the United States.

132.   Plaintiff, through Yavaşçalar A.S., failed to provide an adequate remedy and caused their implied warranties to fail of their essential purpose, thereby permitting remedy under the implied warranties to Defendants.

133.   As a direct and proximate result of the breach of said warranties, Sarac Distributors has suffered both economic and reputational loss as alleged herein in an amount to be determined at trial.

**WHEREFORE,** Defendants respectfully demand judgment in their favor and against Plaintiff, and request compensatory damages, special damages, interest, attorneys' fees and costs, and such additional and further relief this Court deems just and proper.

## <u>AFFIRMATIVE DEFENSES</u>

Defendants assert the following affirmative defenses without assuming the burden of proof or persuasion that would otherwise remain with the Plaintiff. Each defense is asserted to all claims against all Defendants. In asserting the below affirmative defenses, Defendants expressly incorporate paragraphs 71 through 101 above as if same were more fully set forth herein at length and verbatim. Defendants presently have insufficient knowledge or information on which to form a belief as to whether they may have additional, as yet unstated, affirmative defenses available.

Defendants respectfully reserve the right to amend their Answer and Affirmative Defenses if investigation, discovery, and further information warrants such amendment, and further to assert any applicable matters of law during the pendency of this action. As separate and affirmative defenses, Defendants allege as follows:

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by a failure to state a claim upon which relief can be granted. Plaintiff asserts a claim for breach of contract and for promissory estoppel but cannot obtain equitable relief under a quasi-contract if an express contract exists for the same matters. In addition, Plaintiff has not properly pled facts sufficient to establish any alter ego, as opposed to mere recitation of legal elements of the claim. Defendants also assert that to the extent Plaintiff, through Yavaşçalar A.S., directed or agreed that its ammunition be sold to third parties without payment and/or for a loss, directed or agreed that some of the income from the sale of ammunition should be used to cover other joint costs and expenses of the parties, and/or directed or agreed that some of the ammunition would be sold by non-parties, including 4T USA, LLC,  Plaintiff cannot properly assert a claim for payment for such ammunition.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the statute of limitations applicable to the respective claims. As addressed, in part, in their motion to dismiss, Defendants assert that no binding or contractual promise or agreement was reached for the repayment of any claimed debt with Yavaşçalar A.S. and the statute of limitations for potential recovery on the product invoices has expired.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's damages were the result of the act or acts of a third person or persons over whom Defendants had no control. Specifically, Defendants reference their Counterclaim allegations

about the quality of the products, improper shipments of products, and sales issue with third-party customers. With Yavaşçalar A.S.'s knowledge and approval, some of the ammunition was sold by Defendants at a loss and/or no or minimal profit.  Many of the shipments also included defective ammunition that could not be sold. Additionally, part of the money alleged owed to Plaintiff is the result of Yavaşçalar A.S. authorized ammunition sales by 4T USA, LLC, which is partially owned by Yavaşçalar A.S. and/or its former owners, and the money for such sales is not due or owing from Defendants.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of accord and satisfaction, release, or waiver. Specifically, Defendants reference their Counterclaim allegations about the quality of the products and sales issue with third-party customers. With Yavaşçalar A.S.'s knowledge and approval, some of the ammunition was sold by Defendants at a loss and/or for no or minimal profit.  Also, part of the money alleged owed to Plaintiff is the result of Yavaşçalar A.S. authorized ammunition sales by 4T USA, LLC, which is partially owned by Yavaşçalar A.S. and/or its former owners, and with the agreement of Yavaşçalar A.S., the money for such sales is not due or owing from Defendants. In addition, to the extent that Yavaşçalar A.S. did not demand or timely demand payment from Defendants, and/or agreed to a lesser payment amount, Plaintiff cannot now seek recovery for the full claimed amount due. Finally, to extent that Defendants were instructed to utilize some of the income from the sale of ammunition to cover other joint costs and expenses of the parties, no money is owed.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff failed to mitigate, obviate, diminish, or otherwise act to lessen or reduce their alleged damages, and Plaintiff's claims are otherwise barred, in whole or in part, by the doctrine

of avoidable consequences. Specifically, Defendants reference their Counterclaim allegations about the quality of the products, improper shipments of products, and sales issues with third-party customers that was not timely addressed or corrected by Yavaşçalar A.S. With Yavaşçalar A.S.'s knowledge and approval, some of the ammunition was sold by Defendants at a loss and/or for no or minimal profit, yet Plaintiff still seeks full recovery. In addition, to the extent that Yavaşçalar A.S. agreed to a lesser payment amount, Plaintiff cannot now seek recovery for the full claimed amount due.

## SIXTH AFFIRMATIVE DEFENSE

Independent, intervening, and superseding forces and/or actions of parties or third parties proximately caused or contributed to the alleged losses or damages, barring recovery from Defendants. Defendants reference their Counterclaim allegations about the quality of the products, improper shipments of products, and sales issues with third-party customers. With Yavaşçalar A.S.'s knowledge and approval, some of the ammunition was sold by Defendants at a loss and/or for no or minimal profit.  Also, part of the money allegedly owed to Plaintiff is the result of Yavaşçalar A.S.'s authorized ammunition sales by 4T USA, LLC, which is partially owned by Yavaşçalar A.S. and/or its former owners, and with the agreement of Yavaşçalar A.S., the money for such sales is not due or owing from Defendants. In addition, to the extent that Defendants were instructed to utilize some of the income from the sale of ammunition to cover other joint costs and expenses of the parties, no money is owed.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's alleged causes of action therein are barred by the equitable doctrines of laches, unclean hands, fraud and illegality, res judicata, and/or estoppel. Specifically, Defendants reference their Counterclaim allegations about the quality of the products, improper shipments of

products, and sales issue with third-party customers. With Yavaşçalar A.S.'s knowledge and approval, some of the ammunition was sold by Defendants at a loss and/or no or minimal profit. Also, part of the money allegedly owed to Plaintiff is the result of Yavaşçalar A.S. authorized ammunition sales by 4T USA, LLC, which is partially owned by Yavaşçalar A.S. and/or its former owners, and with the agreement of Yavaşçalar A.S., the money for such sales is not due or owing from Defendants. In addition, to the extent that Defendants were instructed to utilize some of the income from the sale of ammunition to cover other joint costs and expenses of the parties, no money is owed. Defendants assert that Plaintiff's and/or Yavaşçalar A.S.'s tortious conduct asserted in the Counterclaim would be included as conduct barring Plaintiff's claims.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that they engaged in unlawful, inequitable, or improper conduct. Defendants reference their Counterclaim allegations about the quality of the products, improper shipments of products, and sales issues with third-party customers. With Yavaşçalar A.S.'s knowledge and approval, some of the ammunition was sold by Defendants at a loss and/or no or minimal profit.  Also, part of the money allegedly owed to Plaintiff is the result of Yavaşçalar A.S.'s authorized ammunition sales by 4T USA, LLC, which is partially owned by Yavaşçalar A.S. and/or its former owners, and with the agreement of Yavaşçalar A.S., the money for such sales is not due or owing from Defendants. In addition, to the extent that Defendants were instructed to utilize some of the income from the sale of ammunition to cover other joint costs and expenses of the parties, no money is owed. Defendants assert that Plaintiff's and/or Yavaşçalar A.S.'s tortious conduct asserted in the Counterclaim would be included as conduct barring Plaintiff's claims.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by its own defaults and breaches of contract, directly or through Yavaşçalar A.S. Specifically, Defendants reference their Counterclaim allegations about the quality of the products, improper shipments of products, and sales issue with third-party customers. With Yavaşçalar A.S.'s knowledge and approval, some of the ammunition was sold by Defendants at a loss and/or no or minimal profit.  Also, part of the money allegedly owed to Plaintiff is the result of Yavaşçalar A.S.'s authorized ammunition sales by 4T USA, LLC, which is partially owned by Yavaşçalar A.S. and/or its former owners, and with the agreement of Yavaşçalar A.S., the money for such sales is not due or owing from Defendants. In addition, to the extent that Defendants were instructed to utilize some of the income from the sale of ammunition to cover other joint costs and expenses of the parties, no money is owed.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by failure and/or lack of consideration. Defendants assert that some of the money allegedly owed to Plaintiff is the result of Yavaşçalar A.S.'s authorized ammunition sales by 4T USA, LLC, which is partially owned by Yavaşçalar A.S. and/or its former owners, and with the agreement of Yavaşçalar A.S., the money for such sales is not due or owing from Defendants. In addition, to the extent that Defendants were instructed to utilize some of the income from the sale of ammunition to cover other joint costs and expenses of the parties, no money is owed. Ammunition and other products provided by Yavaşçalar A.S. to Defendants without an expectation of payment lack consideration.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the statute of frauds. Defendants assert that, pending discovery, to the extent that any of the sales at issue or alleged agreements to pay

were not evidenced by appropriate written documentation, such claims would potentially fall under the statute of frauds. This affirmative defense is being asserted to avoid potential waiver prior to the completion of discovery.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff, by its actions and conduct, and/or the actions and conduct of Yavaşçalar A.S., has waived and abandoned any and all claims as alleged herein against Defendants. Specifically, Defendants reference their Counterclaim allegations about the quality of the products, improper shipments of products, and sales issues with third-party customers. With Yavaşçalar A.S.'s knowledge and approval, some of the ammunition was sold by Defendants at a loss and/or for no or minimal profit.  Also, part of the money allegedly owed to Plaintiff is the result of Yavaşçalar A.S.'s authorized ammunition sales by 4T USA, LLC, which is partially owned by Yavaşçalar A.S. and/or its former owners, and with the agreement of Yavaşçalar A.S., the money for such sales is not due or owing from Defendants. In addition, to the extent that Defendants were instructed to utilize some of the income from the sale of ammunition to cover other joint costs and expenses of the parties, no money is owed. Many of the shipments by Yavaşçalar A.S. also included defective bullets. Further, to the extent that Yavaşçalar A.S. did not demand or timely demand payment from Defendants, and/or agreed to a lesser payment amount, Plaintiff cannot now seek recovery for the full claimed amount due.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint, and each cause of action therein may be barred, in whole or in part, by way of modification of agreement.  Specifically, Defendants reference their Counterclaim allegations about the quality of the products, improper shipments of products, and sales issue with third-party customers. With Yavaşçalar A.S.'s knowledge and approval, some of the ammunition

was sold by Defendants at a loss and/or for no or minimal profit.  Also, part of the money allegedly owed to Plaintiff is the result of Yavaşçalar A.S.'s authorized ammunition sales by 4T USA, LLC, which is partially owned by Yavaşçalar A.S. and/or its former owners, and with the agreement of Yavaşçalar A.S., the money for such sales is not due or owing from Defendants. In addition, to the extent that Defendants were instructed to utilize some of the income from the sale of ammunition to cover other joint costs and expenses of the parties, no money is owed. Further, to the extent that Yavaşçalar A.S. did not demand or timely demand payment from Defendants, and/or agreed to a lesser payment amount, Plaintiff cannot now seek recovery for the full claimed amount due.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff never provided Defendants with notice of the alleged breach of contract and never provided Defendants with the opportunity to cure such a breach, and therefore, Plaintiff's claims and causes must be dismissed.

## FIFTEENTH AFFIRMATIVE DEFENSE

The damages alleged in the Complaint, if any, were caused by the breach of contract or comparative fault, recklessness and/or culpable conduct of the Plaintiff and, by reason thereof, Plaintiff is not entitled to judgment, and pleading in the alternative, any award or judgment in favor of the Plaintiff should be diminished in proportion to the breach of contract, comparative fault, recklessness and/or culpable conduct attributable to the Plaintiff compared to the breach or culpable conduct, if any, of Defendants and/or any non-parties. Specifically, Defendants reference their Counterclaim allegations about the quality of the products, improper shipments of products, and sales issues with third-party customers. Part of the money allegedly owed to Plaintiff is the result of Yavaşçalar A.S.'s authorized ammunition sales by 4T USA, LLC, which is partially owned by Yavaşçalar A.S. and/or its former owners, and with the agreement of Yavaşçalar A.S.,

the money for such sales is not due or owing from Defendants. In addition, to the extent that Defendants were instructed to utilize some of the income from the sale of ammunition to cover other joint costs and expenses of the parties, no money is owed. Many of the shipments by Yavaşçalar A.S. also included defective bullets.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff gratuitously provided goods to Defendants without any expectation of sale and/or payment. Defendants assert that goods were provided to Defendants by Yavaşçalar A.S. knowing they would not be sold for profit and/or where no payment was due. Part of the money allegedly owed to Plaintiff is the result of Yavaşçalar A.S.'s authorized ammunition sales by 4T USA, LLC, which is partially owned by Yavaşçalar A.S. and/or its former owners, and with the agreement of Yavaşçalar A.S., the money for such sales is not due or owing from Defendants. In addition, to the extent that Defendants were instructed to utilize some of the income from the sale of ammunition to cover other joint costs and expenses of the parties, no money is owed.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Defendants are entitled to a set-off for benefits, income and/or profits obtained by Plaintiff at the expenses of Defendants. Defendants assert that to the extent Plaintiff, through Yavaşçalar A.S., directed that its products be directed to third parties, such as 4T USA, LLC, and/or that income from the sales of its products be used to cover other joint costs and expenses of the parties, Plaintiff cannot properly assert a claim for such products. Defendants also asserts that the tortious conduct asserted in the Counterclaim should eliminate, reduce or diminish Plaintiff's potential damages claimed in this matter.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff cannot establish one or more elements of its claims for breach of contract and/or promissory estoppel. To the extent that part of the money allegedly owed to Plaintiff is the result of Yavaşçalar A.S. authorized ammunition sales by 4T USA, LLC, which is partially owned by Yavaşçalar A.S. and/or its former owners, and with the agreement of Yavaşçalar A.S., Plaintiff cannot properly assert a claim for such  money. In addition, to the extent that Defendants were instructed to utilize some of the income from the sale of ammunition to cover other joint costs and expenses of the parties, Plaintiff cannot properly assert a claim for such money. Further, Defendants assert that no promise of payment and/or contract or agreement evidencing offer, acceptance and meeting of the minds related to payment by Defendants was ever reached between Defendants and Yavaşçalar A.S. Defendants also asset that confidential settlement discussions cannot form the basis for a payment agreement and/or promissory estoppel.

## NINETEENTH AFFIRMATIVE DEFENSE

There is no evidence of any of the bases for piercing the corporate veil alleged by Plaintiff, nor any evidence to demonstrate how the same sanctioned a fraud or promoted injustice toward the Plaintiff.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff cannot demonstrate any element of reasonable reliance by the Plaintiff upon the Defendants' conduct that would indicate any basis for piercing the corporate veil or demonstrate damages incurred by Plaintiff which were proximately caused by Mr. Sarac in an individual capacity.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff has failed to allege and cannot show any causal connection between the way Sarac Distributors and/or Yavex were capitalized or operated and the subsequent inability to pay the obligation allegedly owed to Plaintiff.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff has failed to establish that Defendants made a promise that was clear and unambiguous in its terms, and reasonably relied upon by Plaintiff, to supports its promissory estoppel claim.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff is not a proper or legal successor in interest to Yavaşçalar A.S. As further addressed in its motion to dismiss, Defendants assert that Plaintiff did not legally and properly obtain the rights to, and interest in, Yavaşçalar A.S.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff lacks standing to pursue this action. Defendants assert that since Plaintiff did not legally and properly obtain the rights to, and interest in, Yavaşçalar A.S., it lacks standing to bring this action.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff illegally and unlawfully acquired the assets of Yavaşçalar A.S. As further addressed in its motion to dismiss, Defendants assert that Plaintiff did not legally and properly obtain the rights to, and interest in, Yavaşçalar A.S.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

The legal doctrine of comity cannot be applied to Plaintiff's claimed acquisition of Yavaşçalar A.S. Defendants assert that since Plaintiff did not legally and properly obtain the rights

to, and interest in, Yavaşçalar A.S., through actions that would be recognized as legal and proper under applicable law, the legal doctrine of comity cannot be applied to such acquisition.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint should be dismissed due to improper reliance on confidential settlement communications. To the extent Plaintiff is attempting to form a contractual agreement through confidential settlement communions, such actions are improper and warrant dismissal of the claim.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendants demand a trial by jury on all issues appropriate for the jury to consider.


Respectfully submitted,

By: s/Ryan L. Erdreich
    Ryan L. Erdreich, Esq. (Florida Bar No.:  65712)
    rerdreich@pmlegalfirm.com
    PISCIOTTI MALSCH
    30 Columbia Turnpike, Suite 205
    Florham Park, New Jersey 07932
    Telephone:  (973) 245-8100
    Facsimile:   (973) 245-8101

    *Attorneys for Defendants Matthew Sarac, Sarac*
    *Distributors LLC, and Yavex LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 28th day of May 2020, I caused the foregoing to be electronically filed with the Clerk of the Court and served on counsel for all parties via the Court's Electronic Case Filing System.

Dated: May 28, 2020

By:   <u>s/ Ryan L. Erdreich</u>
Ryan L. Erdreich, Esq.
Florida Bar No.: 65712