# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### AT FORT MYERS

| | | |
|---|---|---|
| ZSR Patlayici Sanayi A.S., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 2:19-CV-00864-SPC-MRM |
| | ) | |
| Matthew Sarac, | ) | |
| Sarac Distributors LLC, and | ) | |
| Yavex LLC, | ) | JURY DEMAND |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S MOTION TO DISMISS
## CERTAIN OF DEFENDANTS' AMENDED COUNTERCLAIMS AND TO
## STRIKE CERTAIN OF DEFENDANTS' AMENDED AFFIRMATIVE DEFENSES

Mehmet Baysan (*pro hac vice*)
Matthew W. Olinzock (*pro hac vice*)
**BREEDING HENRY BAYSAN PC**
7 World Trade Center
250 Greenwich Street, 46th Floor
New York, NY 1006
Tel: 212-235-1127
Fax: 865-670-8536
mbaysan@bhblegal.com
molinzock@bhblegal.com

Ludmila Khomiak (FL 91757)
**THE CASAS LAW FIRM, PC**
Brickell Bayview Center
80 S.W. 8th Street, Suite 2000
Miami, FL 33130
Tel: 855-267-4457
mila@casaslawfirm.com

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

FACTS ......................................................................................................................... 2

ARGUMENT .............................................................................................................. 6

  I. THE COURT SHOULD DISMISS COUNTS I AND II FOR FAILURE TO STATE A CLAIM ................................................................................................................ 6

    A. Counts I And II For Tortious Interference Should Be Dismissed Because The Counterclaims Fail To Allege The Specific Contract And Business Relationship At Issue .................................................................................................................... 6

    B. In The Alternative, Those Portions Of Counts I And II For Tortious Interference Premised On Alleged Defects In The Ammunition Should Be Dismissed Under The Economic Loss Rule ............................................................................................. 10

  II. THE COURT SHOULD DISMISS THE PORTIONS OF COUNTS I AND II PREMISED ON ALLEGATIONS UNRELATED TO THOSE IN THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION .......................................................................... 12

  III. THE COURT SHOULD STRIKE AFFIRMATIVE DEFENSES 3, 5, 7 (in-part), 8–10, 12, 15, 17–22, and 24–27 ........................................................................................ 16

    A. Affirmative Defense 3 Laying Fault With The "Acts Of A Third Person Or Persons" Should Be Stricken As Redundant Of Affirmative Defense 6 ...................................... 17

    B. Affirmative Defense 5 For Failure To "Mitigate, Obviate, Diminish, Or Otherwise Act To Lessen Or Reduce Their Alleged Damages . . . [and] Avoidable Consequences" Should Be Stricken Because Defendants Do Not Allege Sufficient Facts ................... 17

    C. Portions of Affirmative Defense 7 For "Fraud" and "Res Judicata" Should Be Stricken Because Defendants Do Not Allege Sufficient Facts ................................................ 18

    D. Affirmative Defense 8 For "Unlawful, Inequitable, Or Improper Conduct" Should Be Stricken As Redundant Of Affirmative Defense 7 ........................................................ 18

    E. Affirmative Defense 9 For ZSR's Alleged "Defaults And Breaches" Should Be Stricken Because Defendants Do Not Allege Sufficient Facts ................................... 18

    F. Affirmative Defense 10 For "Failure And / Or Lack Of Consideration" Should Be Stricken Because Defendants Do Not Allege Sufficient Facts ................................... 19

    G. Affirmative Defense 12 Asserting Waiver And Abandonment Should Be Stricken As Redundant of Affirmative Defense 4 ......................................................................... 19

    H. Affirmative Defense 15 For "Breach Of Contract Or Comparative Fault, Recklessness And/Or Culpable Conduct" Of ZSR Should Be Stricken As Redundant Of Affirmative Defense 6, And To The Extent Not Redundant, Because Defendants Do Not Allege Sufficient Facts ..................................................................................................... 19

I.   Affirmative Defense 17 For A Set-Off Should Be Stricken Because Defendants Do Not Allege Sufficient Facts ........................................................................................... 20

J.   Affirmative Defenses 18 To 22 Should Be Stricken Because They Are Attacks On ZSR's Prima Facie Case And Are Not Affirmative Defenses ..................................... 20

K.   Affirmative Defenses 24 To 26 Should Be Stricken Because They Are Redundant Of Affirmative Defense 23 ............................................................................................... 21

L.   Affirmative Defense 27 For "Improper Reliance On Confidential Settlement Communications" Should Be Stricken Because This Court Already Rejected This Argument .................................................................................................................. 22

CONCLUSION ..................................................................................................................... 22

## **TABLE OF AUTHORITIES**

**Cases**

*Adam v. Saenger*,
    303 U.S. 59 (1938) .............................................................................................. 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................ 6

*Astro Tel, Inc. v. Verizon Fla., LLC*,
    979 F. Supp. 2d 1284 (M.D. Fla. 2013) .......................................................... 6

*Beach Park Development Corp. v. Remhof*,
    673 So. 2d 912 (Fla. DCA 1996) ..................................................................... 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................... 6, 9

*Burden v. Dickman*,
    547 So.2d 170 (Fla. 3d DCA 1989) ................................................................ 13

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .......................................................................................... 15

*Cent. States, S.E. & S.W. v. Fla. Soc'y of Pathologists*,
    824 So.2d 935 (Fla. 5th DCA 2002) ............................................................... 6

*Coach Servs, Inc. v. 777 Lucky Accessories, Inc.*,
    752 F. Supp. 2d 1271 (S.D. Fla. 2010) ......................................................... 7

*Edwards v. Johnson*,
    569 So. 2d 473 (Fla. DCA 1990) ................................................................... 13

*EMP Indus., Inc. v. KECO Inc.*,
    No. 8:17-CV-869-T-17JSS, 2017 WL 10899974 (M.D. Fla. Nov. 2, 2017) ........................ 7, 9

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*,
    647 So.2d 812 (Fla.1994) ............................................................................... 7

*Evergreen Sys., Inc. v. Geotech Lizenz AG*,
    697 F. Supp. 1254 (E.D.N.Y. 1988) ............................................................. 13

*F.D.I.C. v. Bayer*,
    No. 2:13-cv-752-FtM-29DNF, 2015 WL 686952 (M.D. Fla. Feb. 18, 2015) ................ 17

iv

*Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc.*,
   2014 WL 12461349 (S.D. Fla. Jan. 7, 2014) ........................................................................... 7

*Hill Dermaceuticals, Inc. v. Anthem, Inc.*,
   228 F. Supp. 3d 1292 (M.D. Fla. 2017) ................................................................................... 7

*In re Rawson Food Service, Inc.*,
   846 F.2d 1343 (11th Cir.1988) ....................................................................................... 20, 21

*In re Takata Airbag Prod. Liab. Litig.*,
   193 F. Supp. 3d 1324 (S.D. Fla. 2016) .................................................................................. 11

*Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*,
   262 F.3d 1152 (11th Cir.2001) ................................................................................................ 7

*Internet Sols. Corp. v. Marshall*,
   39 So. 3d 1201 (Fla. 2010) .................................................................................................... 15

*Jack Pickard Dodge, Inc. v. Yarbrough*,
   352 So.2d 130 (Fla. 1st Dist. Ct.App.1977) .......................................................................... 15

*Maglione-Chenault v. Douglas Realty & Dev., Inc.*,
   No. 2:13-cv-811-Ftm-38CM, 2014 WL 1389575 (M.D. Fla. Apr. 9, 2014) ........................... 21

*Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*,
   No. 15-24363-CIV, 2018 WL 4932871 (S.D. Fla. Apr. 23, 2018) .......................................... 11

*McLean Fin. Corp. v. Winslow Loudermilk Corp.*,
   509 So. 2d 1373 (Fla. 5th Dist.Ct.App.1987) ........................................................................ 15

*Merrill v. Dyck-O'Neal, Inc.*,
   No. 2:15-cv-232-FtM-38MRM, 2015 WL 4496101 (M.D. Fla. July 23, 2015) ............... 17, 20

*Microsoft Corp. v. Jesse's Computers & Repair, Inc.*,
   211 F.R.D. 681 (M.D. Fla. 2002) .......................................................................................... 17

*Mut. Serv. Ins. Co. v. Frit Indus.*, Inc.,
   358 F.3d 1312 (11th Cir. 2004) ............................................................................................. 16

*Posner v. Essex Ins. Co.*,
   178 F.3d 1209 (11th Cir. 1999) ............................................................................................. 15

*Premium Leisure, LLC v. Gulf Coast Spa Manufacturers, Inc.*,
   No. 808-CV-1048-T-24EAJ, 2008 WL 3927265 (M.D. Fla. Aug. 21, 2008) ......................... 12

*Republic Health Corp. v. Lifemark Hospitals of Florida., Inc.*,
    755 F.2d 1453 (11th Cir.1985) ............................................................ 12

*RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*,
    362 F. Supp. 3d 1226 (M.D. Fla. 2019) .................................... 14, 15, 16

*Rockwood Nat'l Corp. v. Peat, Marwick, Mitchell & Co.*,
    406 N.Y.S.2d 106 (App. Div. 1978) ..................................................... 13

*Rosada v. John Wieland Homes and Neighborhoods, Inc.*, No. 3:09-cv-653-J-20MCR, 2010 WL
    1249841 (M.D. Fla. Mar. 25, 2010) ..................................................... 21

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999) ............................................................................ 14

*Sarkis v. Pafford Oil Co., Inc.*,
    697 So.2d 524 (Fla. 1st DCA 1997) ....................................................... 7

*Texas Guaranteed Student Loan Corp. v. Ward*,
    696 So.2d 930 (Fla.2d Dist. Ct.App.1997) .......................................... 15

*Thomas v. Brown*,
    504 F. App'x 845 (11th Cir. 2013) ...................................................... 14

*Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*,
    110 So. 3d 399 (Fla. 2013) .................................................................. 10

*Topp, Inc. v. Uniden Am. Corp.*,
    483 F. Supp. 2d 1187 (S.D. Fla. 2007) ............................................... 11

*Total Containment Sols., Inc. v. Glacier Energy Servs., Inc.*,
    No. 2:15-CV-63-FTM-38CM, 2015 WL 13805861 (M.D. Fla. June 19, 2015) ..................... 17

*Tsavaris v. Pfizer, Inc.*,
    310 F.R.D. 678 (S.D. Fla. 2015) .......................................................... 21

*Venetian Salami Co. v. Parthenais*,
    554 So.2d 499 (Fla.1989) .................................................................... 15

*Walden v. Fiore*,
    571 U.S. 277 (2014) ............................................................................ 16

*Wright v. Southland Corp.*,
    187 F.3d 1287 (11th Cir.1999) ....................................................... 17, 20

**Statutes**

Fla. Stat. § 48.193 ................................................................................................................. 14

**Rules**

Federal Rule of Civil Procedure 8 .......................................................................................... 6

Federal Rule of Civil Procedure 12 ........................................................................................ 1

Federal Rule of Civil Procedure 13 ...................................................................................... 12

NOW COMES the Plaintiff, ZSR Patlayici Sanayi A.S. ("ZSR" or "Plaintiff"), pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(2) and 12(f), to submit this Motion to Dismiss Certain of Defendants' Matthew Sarac, Sarac Distributors LLC and Yavex LLC's (collectively, the "Defendants") Amended Counterclaims and to Strike Certain of Defendants' Amended Affirmative Defenses. Specifically, pursuant to Fed. R. Civ. P. 12(b)(6), ZSR seeks to dismiss Counts I and II of Defendants' counterclaims. Pursuant to Fed. R. Civ. P. 12 (b)(2), ZSR seeks to dismiss portions of Counts I and II of Defendants' counterclaims. Pursuant to Fed. R. Civ. P. 12(f), ZSR seeks to strike Defendants' Affirmative Defenses 3, 5, 7 (in-part), 8–10, 12, 15, 17–22, and 24–27.

## INTRODUCTION

Defendants' amended counterclaims and affirmative defenses continue Defendants' strategy of unnecessarily complicating a straightforward breach of contract and promissory estoppel case by inserting irrelevant facts and making unsubstantiated claims. These tactics must be rejected.

As to Defendants' amended counterclaims specifically, Defendants seek to excuse their failures by alleging that the ammunition ZSR sold to Defendants (and that Defendants agreed to pay for well after the ammunition was delivered and presumably inspected) was defective, that ZSR "illegally" sold ammunition in Turkey to foreign buyers, and that ZSR's predecessor-in-interest's founder was arrested and his company put in administration prior to its acquisition by ZSR. Based on these allegations, Defendants assert three counterclaims—tortious interference with an existing contract and an advantageous business relationship (Counts I and II, respectively), and breach of implied warranty (Count III).

1

Defendants' two tortious interference counterclaims (Counts I and II) should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim because, despite already amending these counterclaims once, Defendants still fail to allege any specific contract or business relationship with which ZSR interfered—a requirement under Florida law.   Moreover, pursuant to the economic loss rule, the Court should also dismiss the portions of  these same counterclaims grounded in alleged defects in the ammunition sold by ZSR because Defendants do not allege bodily injury or property damage—another requirement under Florida law.  Further, pursuant to Rule 12(b)(2), the Court should dismiss the portions of these counterclaims that are premised on allegations of "illegal" foreign arms sales and a foreign arrest and administration because Defendants fail to allege a prima facie basis for this Court to exercise jurisdiction over ZSR.  While Defendants' breach of warranty claim (Count III) is outside the scope of this motion, it is equally without merit and will be addressed in accordance with the Court's scheduling order.

As to the Defendants' twenty-seven (27) affirmative defenses, the Court should strike Affirmative Defenses 3, 5, 7 (in-part), 8–10, 12, 15, 17–22, and 24–27 as insufficiently pled or as redundant. The remaining affirmative defenses, while of no substantive merit, are not addressed in this motion.

Therefore, as set forth below, the Court should dismiss Counts I and II of Defendants' amended counterclaims, and strike Affirmative Defenses 3, 5, 7 (in-part), 8–10, 12, 15, 17–22, and 24–27.

## **FACTS**

The First Amended Complaint (hereinafter, the "Complaint") sets forth textbook breach of contract and promissory estoppel claims for Defendants' failure to pay the outstanding balance for

their purchase of ammunition from Plaintiff pursuant to an agreement, or in the alternative, promises made, on or about June 30, 2016. *See generally* Dkt. 39.

The Defendants attempt to excuse this nonpayment by alleging three separate sets of allegations: (1) that the ammunition that ZSR sold to Defendants was supposedly defective causing "financial loss, decreased profits, loss of profits, and harm to the reputation of Sarac Distributors" (Dkt. 47 at ¶¶ 73–86); (2) that ZSR "illegally" and "unlawfully" sold ammunition to "prohibited third parties" resulting in "Defendants receiv[ing] death threats, threats to their business and fac[ing] increased difficulty selling not only the Yavex ammunition, but unrelated products sold by Sarac Distributors" and "causing Sarac Distributors and Mr. Sarac to suffer great financial loss, decreased profits, loss of business, loss of profits, harm to the Yavex USA brand, and harm to the reputation of Mr. Sarac and Sarac Distributors" (*id.* at ¶¶ 87–94); and (3) that the owner and founder of ZSR's predecessor-in-interest was arrested by Turkish authorities and his company went into administration causing "the 'Yavex' brand and Defendants [to] receive negative publicity which resulted in backlash, public embarrassment and harm to Defendants' reputations, and caused Sarac Distributor and Mr. Sarac to suffer great financial loss, decreased profits, loss of business, loss of profits, harm to the Yavex USA brand, and harm to the reputation of Mr. Sarac and Sarac Distributors" (*id.* at ¶¶ 95–99).

Based on these allegations, Defendants assert three counterclaims: (1) tortious interference with existing contracts (Count I) (*id.* at ¶¶ 102–111); (2) tortious interference with advantageous business relations (Count II) (*id.* at ¶¶ 112–123); and (3) breach of implied warranty of merchantability, violation of Fla. Stat. § 672.314 (Count III) (*id.* at ¶¶ 124–133). The tortious interference counterclaims (Counts I and II) are based on all three sets of allegations—*i.e.* (1) defective ammunition, (2) "illegal" ammunition sales, and (3) the arrest of the owner of ZSR's

predecessor-in-interest and the administration of his company. *Id.* at ¶¶ 103–111, 113-123. The implied warranty claim (Count III), meanwhile, is based only on the allegedly defective ammunition. *Id.* at ¶¶ 125–133.

The only damages alleged by plaintiff are economic injuries in terms of lost profits and disappointment of related economic expectations. *Id.* at ¶¶ 73, 80–86, 92–94, 99, 105–106, 109, 120–121, 133. Defendants do not allege any property damage or personal injury. *See id.*

As to Counts I and II for tortious interference with a contract and business relationship, respectively, the Defendants amended counterclaims, like their original counterclaims (Dkt. 41 at ¶¶ 85–92, 100–121), still do not allege the specific contract or business relationship with which ZSR allegedly interfered. Rather, Defendants instead identify the contracts broadly and in often contradictory terms. Specifically, in the body of the counterclaims which the Defendants incorporate into Counts I and II, Defendants describe the alleged relationships and/or contracts at issue as those with "U.S. customers, including certain large ammunition manufacturers and retailers with whom Sarac regularly conducted business, including regular business for the 'Yavex' brand ammunition." *Id.* at ¶¶ 82–83. However, in the allegations specific to Count I for tortious interference with an existing contract, Defendants allege the contracts using various different descriptions:

- "existing contracts and orders for the sale of 'Yavex' brand ammunition to certain large ammunition manufacturers and retailers in the United States" (¶ 103);
- "contractual and/or business relationships between Defendants and ongoing relationships with purchasers of 'Yavex' brand ammunition, including certain large ammunition manufacturers and retailers in the U.S. to whom Defendants regularly sold ammunition and previously sold the 'Yavex' brand ammunition" (¶ 104);
- with "purchasers of Yavex ammunition . . . sales contracts and orders with Sarac Distributors" (¶ 105);
- with "large ammunition manufacturers and retailers with whom Defendants regularly sold ammunition, including 'Yavex' brand ammunition" (¶ 105);
- "existing contracts for the sale of 'Yavex' brand ammunition in the United States (¶ 105); and

- "existing sales contracts for the sale of Yavex ammunition in the United States" (¶ 106).

Similarly, in the allegations specific to Count II for tortious interference with business relationships, Defendants again allege the relationships at issue in a number of different ways:

- with "certain existing customers with whom Defendants regularly sold ammunition, including certain large ammunition manufacturers and retailers" (¶ 113);
- "ongoing advantageous business relationships with purchasers of ammunition in the United States, including certain large ammunition manufacturers and retailers" (¶ 114);
- "advantageous business relationships with purchasers of other products they sell, including certain large firearms and shooting sports retailers in the United States" (¶ 115)
- "new business and contractual relationships for the sale of 'Yavex' ammunition" (¶ 116);
- with "potential actual, real and identifiable purchasers of 'Yavex' brand ammunition" (¶ 117);
- with "certain existing and identifiable customers with whom Defendants have regular business dealings" (¶ 118);
- with "identifiable purchasers of 'Yavex' brand ammunition, including certain large ammunition manufacturers and retailers (¶ 120); and
- with "identifiable purchasers of Defendants' other products, including certain large firearms and sporting goods retailers" (¶ 121).

Apart from their counterclaims, Defendants further seek to excuse ZSR's two claims—for breach of contract and promissory estoppel—by asserting twenty-seven (27) affirmative defenses. The majority of these affirmative defenses are premised on a basic set of allegations: that ZSR's predecessor-in-interest directed the Defendants to sell the ammunition at below cost; that some of sales were "the result of [ZSR's predecessor-in-interests] authorized ammunition sales by 4T USA, LLC," an entity allegedly partially owned by the same predecessor-in-interest; that ZSR's predecessor-in-interest directed Defendants to "joint costs and expenses of the parties;" and by reference to the allegations in the counterclaims.

## ARGUMENT

## I.  THE COURT SHOULD DISMISS COUNTS I AND II FOR FAILURE TO STATE A CLAIM

The Court should dismiss Counts I and II for tortious interference with a contract and tortious interference with advantageous business relationship, respectively, for failure to state a claim.  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citations omitted).  "To survive a motion to dismiss, a [claim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [party] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Here, even accepting the factual allegations true, Defendants have still failed to state a claim.

### A.  Counts I And II For Tortious Interference Should Be Dismissed Because The Counterclaims Fail To Allege The Specific Contract And Business Relationship At Issue

The Court should dismiss Counts I and II for tortious interference with an existing contract and with an advantageous business relationship, respectively, because the counterclaims do not allege the specific contract or business relationship with which ZSR allegedly interfered. "Tortious interference with a contract and tortious interference with a business relationship are basically the same cause of action" with "[t]he only material difference . . . [being] that in one there is a contract and in the other there is only a business relationship." *Astro Tel, Inc. v. Verizon Fla., LLC*, 979 F. Supp. 2d 1284, 1297 n.7 (M.D. Fla. 2013) (quoting *Cent. States, S.E. & S.W. v. Fla. Soc'y of Pathologists*, 824 So.2d 935, 940 (Fla. 5th DCA 2002)).  The required elements of a claim for

tortious interference with a contractual or business relationship under Florida law are: "(1) the existence of a [contract or] business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the [contract or] business relationship; (3) the defendant's intentional and unjustified interference with the relationship [or contract]; and (4) damage to the plaintiff." *Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.,* 262 F.3d 1152, 1154 (11th Cir.2001) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So.2d 812, 814 (Fla.1994)).

With respect to the first element, "it is well-settled that a business's relationship with the general consuming public is not protected; instead the asserted relationship must be with an identifiable customer." *EMP Indus., Inc. v. KECO Inc.*, No. 8:17-cv-869-T-17JSS, 2017 WL 10899974, at *2 (M.D. Fla. Nov. 2, 2017) (quoting *Hill Dermaceuticals, Inc. v. Anthem, Inc*., 228 F. Supp. 3d 1292, 1301 (M.D. Fla. 2017)).   To that end, Florida district courts require that the pleading identify the specific contract or business relationship that was allegedly interfered with— mere claims of interference with unnamed "contracts" or "customers" are insufficient. *See EMP*, 2017 WL 10899974, at *2.[1]

_____

[1] *See also, e.g.*, *Hill Dermaceuticals,* 228 F. Supp. 3d at 1302 (dismissing claim for tortious interference where the complaint "fail[ed] to identify any current or prospective consumer with whom [the plaintiff] ha[d] an actual and identifiable understanding regarding the sale and purchase of [the goods at issue]") (internal quotations omitted); *Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc.*, 2014 WL 12461349, at *12 (S.D. Fla. Jan. 7, 2014) (dismissing claim for tortious interference where the plaintiff merely alleged that it had business relationships with "manufacturers, retailers, [and/or] suppliers, explain that "under Florida law, generalized allegations of business relationships with unidentified customers are insufficient to state a claim for tortious interference with business relationships"); *Coach Servs, Inc. v. 777 Lucky Accessories, Inc.*, 752 F. Supp. 2d 1271, 1273 (S.D. Fla. 2010) (dismissing claim for tortious interference, explaining that allegations that a defendant interfered with "various customers" was too vague and abstract to state a claim for tortious interference with business relationships under Florida law); *Sarkis v. Pafford Oil Co., Inc.*, 697 So.2d 524, 526–27 (Fla. 1st DCA 1997) (dismissing claim for tortious interference that alleged "general loss of business" and failed to "identify the customers who were the subject of the alleged interference").

For example, in *EMP*, the plaintiff alleged that the defendant tortiously interfered with its "business relationships with customers, potential customers, and vendors," including its "'customer base' that goes back 25 years," by "setting up fraudulent copycat websites to divert web traffic away from the Plaintiff's business" and "wrongfully obtaining proprietary information and trade secrets from one of the Plaintiff's former employees," among other allegations. *Id.* at *2. The court dismissed the claim because "the operative complaint fail[ed] to identify any of the current or prospective customer relationships that the Plaintiff claims have been interfered with." *Id*.

Here, the Defendants tortious interference counterclaims fair no better because just as in *EMP* (and the cases in fn. 2, *infra*), the counterclaims do not allege the specific contract or relationship with which ZSR interfered.  Rather, Defendants allege "existing contracts" that were interfered with generically and inconsistently, describing them at various times as "existing contracts and orders for the sale of 'Yavex' brand ammunition to certain large ammunition manufacturers and retailers in the United States" (*Id.* at ¶ 103), "contractual and/or business relationships between Defendants and ongoing relationships with purchasers of 'Yavex' brand ammunition, including certain large ammunition manufacturers and retailers in the U.S. to whom Defendants regularly sold ammunition and previously sold the 'Yavex' brand ammunition" (¶ 104), "existing contracts for the sale of 'Yavex' brand ammunition in the United States (¶ 105), and "existing sales contracts for the sale of Yavex ammunition in the United States" (¶ 106).

Similarly, the counterclaims do not identify any specific business relationship, instead describing these as relationships variously as with "certain existing customers with whom Defendants regularly sold ammunition, including certain large ammunition manufacturers and retailers" (*Id.* at ¶ 113), "ongoing advantageous business relationships with purchasers of

ammunition in the United States, including certain large ammunition manufacturers and retailers"
(¶ 114), "advantageous business relationships with purchasers of other products they sell,
including certain large firearms and shooting sports retailers in the United States" (¶ 115), "new
business and contractual relationships for the sale of 'Yavex' ammunition" (¶ 116), "potential
actual, real and identifiable purchasers of 'Yavex' brand ammunition" (¶ 117), "certain existing
and identifiable customers with whom Defendants have regular business dealings" (¶ 118),
"identifiable purchasers of 'Yavex' brand ammunition, including certain large ammunition
manufacturers and retailers (¶ 120), and "identifiable purchasers of Defendants' other products,
including certain large firearms and sporting goods retailers." (¶ 121).

Such generic and inconsistent allegations as to the identity of the contracts and business
relationship that lie at the heart of Defendants' tortious interference counterclaims  not only fail
under Florida law, but also fail to put ZSR on actual notice of Defendants' claims.[2]  A party must
allege actual facts that, accepted as true, make a claim plausible on its face (*see Iqbal*, 556 U.S. at
678)—which here would be to allege the actual contracts and relationships ZSR supposedly
interfered with.  *See EMP*, 2017 WL 10899974, at *2.  Rather than alleging such basic facts,
Defendants instead allege these contracts and relationships in such a nonspecific and varied
manner as to prevent ZSR from understanding what contracts and relationships are at issues.  By
way of analogy to a breach of contract case, the Defendants are alleging that ZSR breached a

---

[2] Defendants amended their original counterclaims by adding labels and generic descriptions to
the alleged contracts and relationships in an attempt to meet the pleading requirement without
actually identifying the contract or business relationship at issue.  *Compare* Dkt. 41 at ¶ 101 to
Dkt. 47 at ¶ 103 (adding the label "large ammunition manufacturers and retailers" to the
description of the contracting parties), Dkt. 41 at ¶ 115 to Dkt. 47 at ¶ 117 (add the labels "actual,
real and identifiable" to the description of the purchasers).  Such labels and generic descriptions
are insufficient—a party's obligation under the pleading standard "requires more than labels and
conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*,
550 U.S. at 545 (citation omitted).

contract, without identifying what contract ZSR allegedly breached.   Indeed, this is especially troubling as this case was filed over six months ago and Defendants have already amended their counterclaims to address this very issue.   Put another way, without knowing what contracts and relationships are at issue, ZSR cannot fairly respond to these allegations.   For example, absent identification of a specific contract or relationship that ZSR is alleged to have interfered with, ZSR cannot respond to Defendants' allegation that ZSR knew of such a contract or relationship, which is a prima facie element of both claims.

Therefore, the Court should dismiss Counts I and II for failure to state a claim because the counterclaims do not identify the specific contracts or business relationships with which ZSR allegedly interfered.

### B.  In The Alternative, Those Portions Of Counts I And II For Tortious Interference Premised On Alleged Defects In The Ammunition Should Be Dismissed Under The Economic Loss Rule

The Court should also dismiss the portions of Defendants' tortious interference counterclaims—Counts I and II—premised on Defendants' allegations of defective ammunition because, in violation of the economic loss rule, Defendants do not allege bodily injury or property damage.   Florida's economic loss rule prohibits a party from seeking the recovery of purely economic losses arising from alleged defects in products, reasoning that "in those cases contract principles [are] more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage." *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 405 (Fla. 2013) (quotation and citations omitted).   Economic loss is defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profit—without any claim of personal injury or damage to other property." *Id.* at 401 (quotations and citations omitted).

The economic loss rule is regularly applied to negligence claims but is also equally applicable to other torts. *See Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-24363-CIV, 2018 WL 4932871, at *6 (S.D. Fla. Apr. 23, 2018) ("[t]he doctrine is commonly applied to negligence claims, but clearly extends to bar claims for common law fraud"); *Topp, Inc. v. Uniden Am. Corp.*, 483 F. Supp. 2d 1187, 1221 (S.D. Fla. 2007) (applying the economic loss rule to bar claim for tortious interference); *In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d 1324, 1339 (S.D. Fla. 2016) (holding the economic loss rule applies to fraudulent inducement and negligent misrepresentation claims). For example, in *Marjam* the plaintiff asserted a claim of common law fraud and breach of warranty based on its allegations that the products sold by the defendant were "underperforming" and otherwise not as promised causing it to suffer lost sales. 2018 WL 4932871, at *6. The court held that the fraud claim was barred by Florida's economic loss rule, explaining that "the only damages allegedly sustained by [the plaintiff]. . . are economic losses related to the lost sales," and that the "cause of action for fraud relies on the exact allegations contained in [the plaintiff's] breach of warranties claims" *Id.*

Similarly, here, the Defendants' tortious interference counterclaims are based in part on their allegation that ZSR sold Defendants supposedly defective ammunition. Dkt. 47 at ¶¶ 102–103, 105–106, 112–113, 117; *see also id.* at ¶¶ 73–86. These are the same allegations that also underly Defendants' breach of implied warranty claim (Count III). *Id.* at 124–133. Further, the only damages Defendants allege are for lost profits and other economic losses, not property damage or bodily injury. *Id.* at ¶¶ 73, 80–86, 92–94, 99, 105–106, 109, 120–121. As such, just as in *Marjam*, under the economic loss rule, the Court should dismiss the portions of Defendants' tortious interference counterclaims—Counts I and II—that are premised on Defendants' allegations of supposed defects in the ammunition.

## II. THE COURT SHOULD DISMISS THE PORTIONS OF COUNTS I AND II PREMISED ON ALLEGATIONS UNRELATED TO THOSE IN THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION

The Court should also dismiss the portions of the tortious interference counterclaims—Claims I and II—that are premised on allegations of "illegal" arms shipments and the Turkish authorities' arrest of ZSR's predecessor-in-interest's founder (Dkt. 47 at ¶¶ 87–99) because the counterclaims fail to allege a prima facie case for the Court to exercise personal jurisdiction over ZSR.

As a preliminary matter, these counterclaims are permissive rather than compulsory. *See* Fed. R. Civ. P. 13(a), (b). This is because "the same operative facts [do not] serve as the basis of both claims [and] the aggregate core of facts upon which the claim[s] rest[] [do not] activate[] additional legal rights, otherwise dormant, in the defendant." *See Republic Health Corp. v. Lifemark Hospitals of Florida, Inc.*, 755 F.2d 1453, 1455 (11th Cir.1985) (quotation omitted). While ZSR's allegations focus on a breach of contract action, these allegations go to wholly unrelated arms shipments and political events in Turkey, Greece, and other foreign countries. *Compare* Dkt. 39 *with* Dkt. 47 at ¶¶ 87–99. In the Middle District of Florida, such "permissive counterclaims [] require an independent [subject matter] jurisdictional basis." *Premium Leisure, LLC v. Gulf Coast Spa Manufacturers, Inc.*, No. 8:08-cv-1048-T-24EAJ, 2008 WL 3927265, at *3 (M.D. Fla. Aug. 21, 2008). However, there is little caselaw let alone consensus as to whether, like subject matter jurisdiction, a court needs an independent basis to assert personal jurisdiction over a permissive counterclaim defendant. That being said, Florida state courts uniformly answer

12

this question in the affirmative.  *See, e.g., Edwards v. Johnson*, 569 So. 2d 473, 474 (Fla. 1st DCA 1990).[3]

In Florida, "[t]he general rule with regard to personal jurisdiction is that a plaintiff who initiates an action in a Florida court subjects himself to the jurisdiction of that court, and to such lawful orders which are thereafter entered, only with respect to the subject matter of the action." *Id*. (citing *Burden v. Dickman*, 547 So.2d 170, 172 (Fla. 3d DCA 1989)).  The court in *Edwards* explained that the by filing suit in Florida, the plaintiff "did not . . . automatically waive any objections to personal jurisdiction he might have as to matters raised in a permissive counterclaim," and that the defendant still bore "burden to show that personal jurisdiction could be obtained."  *Id*; *see also Beach Park Development Corp. v. Remhof*, 673 So. 2d 912 (Fla. 2d DCA 1996) (holding that even though "the subject matter [was] clearly one within the jurisdiction of the court," the court was still required to analyze personal jurisdiction with respect to what it determined was an unrelated permissive counterclaim).

This Court should follow the example of the Florida state courts and require that the Defendants show an independent basis for the Court to exercise personal jurisdiction over ZSR for the permissive counterclaims.  Afterall, as another Middle District court noted, personal jurisdiction "is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication."  *RG Golf Warehouse, Inc. v. Golf Warehouse,*

---

[3] *But see Adam v. Saenger*, 303 U.S. 59, 67–68 (1938) (in a case involving counterclaims so closely related to the claims that would they would be deemed compulsory under the modern Federal Rules, holding that plaintiff had "submitted himself to the jurisdiction of the court . . . for all purposes"); *Evergreen Sys., Inc. v. Geotech Lizenz AG*, 697 F. Supp. 1254, 1257 (E.D.N.Y. 1988) (explaining that a defendant may file a counterclaim containing any assertion against the plaintiff); *Rockwood Nat'l Corp. v. Peat, Marwick, Mitchell & Co.*, 406 N.Y.S.2d 106, 106 (App. Div. 1978) (implying that a state court may read the New York statute to confer personal jurisdiction over permissive counterclaims).

*Inc.*, 362 F. Supp. 3d 1226, 1232 (M.D. Fla. 2019) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)).

Here, Defendants' counterclaims fail to make even a prima facie showing that this Court has an independent basis for exercising personal jurisdiction over ZSR for the portions of Counts I and II that are grounded in the aforementioned allegations of "illegal" shipments, arrest, and corporate administration. "A federal court sitting in diversity must conduct a two-step inquiry to determine whether it may exercise personal jurisdiction over an out-of-state defendant." *RG Golf*, 362 F.Supp. 3d at 1232 (citing *Thomas v. Brown*, 504 F. App'x 845, 847 (11th Cir. 2013)). First, the court must determine whether the exercise of jurisdiction is authorized under the applicable state law. *Id.* Second, the court must determine whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* The claimant "bears the burden of making out a prima facie case for personal jurisdiction by presenting sufficient evidence to withstand a directed verdict motion." *Id.* (quoting *Thomas* 504 F. App'x at 847).

As to the state law inquiry, Defendants' counterclaims do not articulate any basis for asserting personal jurisdiction over ZSR. Affording Defendants the benefit of every presumption, the only arguable basis for the Court to exercise personal jurisdiction over ZSR is subsection (1)(a)(2) of Florida's long-arm statute. Fla. Stat. § 48.193(1)(a)(2). It provides in relevant part that a court may exercise specific personal jurisdiction over a person for "[c]omitting a tortious act within this state." *Id.* While none of the allegations related to the "illegal" shipments, arrest, or corporate administration allege that they were committed in Florida, Defendants' counterclaims do arguably allege that the harm for such allegations was felt by the Defendants in Florida. Dkt. 47 at ¶¶ 92–94, 99. Whether harm in Florida alone is enough to satisfy the Florida long-arm statute

is an issue that Florida state courts are "deeply divided" over.  *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir. 1999).  While ZSR asserts that those cases finding harm suffered in Florida alone to be insufficient to confer jurisdiction to be persuasive,[4] binding Eleventh Circuit precedent holds to the contrary.  *Id.* at 1219 ("according to precedent binding on this court . . . [the tort subsection] extends long-arm jurisdiction over defendants who commit a tort that results in injury in Florida.").

Nonetheless, "the federal due process analysis is not built into Florida's long-arm statute: 'The mere proof of any one of the several circumstances enumerated in section 48.193 as the basis for obtaining jurisdiction of nonresidents does not automatically satisfy the due process requirement of minimum contacts.'"  *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1207 (Fla. 2010) (quoting *Venetian Salami Co. v. Parthenais*, 554 So.2d 499 (Fla.1989)).  Rather, the Court must analyze whether exercising such jurisdiction comports with due process.  *See RG Golf*, 362 F. Supp. 3d at 1232.  The Due Process Clause protects a party's "liberty interest in not being subject to the binding judgments of a forum with which [the defendant] has established no meaningful contacts, ties, or relations."  *Id.*  (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, (1985)).  "The exercise of personal jurisdiction over an out-of-state defendant comports with due process when the defendant has 'minimum contacts with the forum state' and the exercise of such jurisdiction 'does not offend traditional notions of fair play and substantial

---

[4] *See Posner*, 178 F.3d at 1216 (collecting cases, including *Texas Guaranteed Student Loan Corp. v. Ward*, 696 So.2d 930, 932 (Fla. 2d DCA 1997) ("The occurrence of injury alone in Florida does not satisfy" the tort subsection); *McLean Fin. Corp. v. Winslow Loudermilk Corp.*, 509 So. 2d 1373, 1374 (Fla. 5th DCA 1987) (no jurisdiction where alleged tortious act was "making of fraudulent representations in Virginia, by telephone"); *Jack Pickard Dodge, Inc. v. Yarbrough*, 352 So.2d 130, 134 (Fla. 1st DCA 1977) (no jurisdiction where injury occurred in Florida but alleged tortious act was servicing, outside state, of vehicle that caused injury)).

justice.'" *Id.* (quoting *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004)).

Here, the portions of Counts I and II based on the allegations of "illegal" shipments, arrest, and corporate administration in foreign countries fail to meet this standard.  This is because the only allegation linking these alleged tortious and negligent acts to Florida (or anywhere else in the United States) is that they indirectly caused harm to Defendants who reside in Florida.  As the Supreme Court explained in *Walden v. Fiore*, "mere injury to a forum resident is not a sufficient connection to the forum" to confer personal jurisdiction.  571 U.S. 277, 290 (2014).  "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.*  Here, that is not the case—there is no allegation linking such counterclaims to Florida in a meaningful way. *See also RG Golf*, 362 F. Supp. 3d at 1241 (holding that "[w]hile the Complaint allege[d] that [d]efendant's actions were intended to cause harm to [p]laintiff in Florida, the mere injury to a forum resident is not a sufficient connection to the forum to satisfy the minimum contacts inquiry") (citation and quotations omitted).

As such, those portions of Counts I and II that are premised on allegations of "illegal" shipments, arrest, and corporate administration should be dismissed because the Court does not have personal jurisdiction over ZSR for such claims.

## III. THE COURT SHOULD STRIKE AFFIRMATIVE DEFENSES 3, 5, 7 (IN-PART), 8–10, 12, 15, 17–22, AND 24–27

The Court should strike Affirmative Defenses 3, 5, 7 (in-part), 8–10, 12, 15, 17–22, and 24–27.  Pursuant to Federal Rule of Civil Procedure 12(f), courts may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "An affirmative defense is generally a defense that, if established, requires judgment for the defendant

even if the plaintiff can prove his case by a preponderance of the evidence." *Merrill v. Dyck-O'Neal, Inc.*, No. 2:15-cv-232-FtM-38MRM, 2015 WL 4496101, at *1 (M.D. Fla. July 23, 2015) (quoting *Wright v. Southland Corp.,* 187 F.3d 1287, 1303 (11th Cir.1999)).  Affirmative defenses must "provide 'fair notice' of the nature of the defense and the grounds upon which it rests . . . and state a plausible defense."  *F.D.I.C. v. Bayer*, No. 2:13-cv-752-FtM-29DNF, 2015 WL 686952, *2 (M.D. Fla. Feb. 18, 2015) (citations omitted).  If an affirmative defense "comprises no more than 'bare bones conclusory allegations, it must be stricken.'"  *Microsoft Corp. v. Jesse's Computers & Repair, Inc.,* 211 F.R.D. 681, 684 (M.D. Fla. 2002) (citation omitted).

### A. Affirmative Defense 3 Laying Fault With The "Acts Of A Third Person Or Persons" Should Be Stricken As Redundant Of Affirmative Defense 6

The Court should strike Affirmative Defense 3 contending that ZSR's "damages were the result of the acts, or acts of a third person over whom Defendants had no control" because it is redundant of Affirmative Defense 6, which asserts in-part that "actions of . . . third parties proximately caused or contributed to the alleged losses or damages, barring recovery."  *See Total Containment Sols., Inc. v. Glacier Energy Servs., Inc.*, No. 2:15-CV-63-FTM-38CM, 2015 WL 13805861, at *2-4 (M.D. Fla. June 19, 2015) (striking redundant affirmative defenses).  Both of these defenses seek to lay blame on the same alleged nonparties and are based on the same factual allegations.  As such, the Court should strike Affirmative Defense 3.

### B. Affirmative Defense 5 For Failure To "Mitigate, Obviate, Diminish, Or Otherwise Act To Lessen Or Reduce Their Alleged Damages . . . [and] Avoidable Consequences" Should Be Stricken Because Defendants Do Not Allege Sufficient Facts

The Court Should strike Affirmative Defense 5 contending that ZSR "failed to mitigate, obviate, diminish, or otherwise act to lessen or reduce their alleged damages, and Plaintiff's claims are otherwise barred, in whole or in part, by the doctrine of avoidable consequences" because none of the facts alleged by Defendants go to the issues of mitigation, obviation diminishment, reduction

17

in damages or avoidable consequences.  Rather, these are the same basic facts that Defendants allege in nearly every other Affirmative Defense—that ZSR's predecessor-in-interest gave approval to sell the ammunition at a loss.  As such, Affirmative Defense 5 should be stricken.

### C.  Portions of Affirmative Defense 7 For "Fraud" and "Res Judicata" Should Be Stricken Because Defendants Do Not Allege Sufficient Facts

The Court should strike the portions of Affirmative Defense 7 contending that the claims "are barred by . . . fraud . . . [and] res judicata" because Defendants do not allege any facts evidencing any fraud on Defendants or any prior proceedings or decisions such as to implicate res judicata.  Rather, all that is alleged is the same basic set of facts that Defendants allege in nearly every other affirmative defense.  As such, the Court should strike the portions of Affirmative Defense 7 asserting fraud and res judicata.

### D.  Affirmative Defense 8 For "Unlawful, Inequitable, Or Improper Conduct" Should Be Stricken As Redundant Of Affirmative Defense 7.

The Court should strike Affirmative Defense 8 contending that ZSR's "claims are barred to the extent that they engaged in unlawful, inequitable, or improper conduct" because it is redundant of Affirmative Defense 7, which similarly asserts, in-part, that ZSR's claims "are barred by the equitable doctrines of laches, unclean hands, . . . [and] illegality."  Indeed, other than inclusion of the word "specifically" in the second sentence of Affirmative Defense 7, the factual allegations underlying both defenses are identical.  As such, the Court should strike Affirmative Defense 8.

### E.  Affirmative Defense 9 For ZSR's Alleged "Defaults And Breaches" Should Be Stricken Because Defendants Do Not Allege Sufficient Facts

The Court should strike Affirmative Defense 9 contending that the "claims are barred, in whole or in part, by [ZSR's] own defaults and breaches of contract, directly or through Yavaşçalar A.S" because Defendants do not allege what contract ZSR allegedly defaulted on or breached, let

alone how any of the alleged conduct resulted in breaches of these unidentified agreements.  All that is alleged are the same basic facts underlying nearly every other affirmative defense.  As such, the Court should strike Affirmative Defense 9.

### F. Affirmative Defense 10 For "Failure And / Or Lack Of Consideration" Should Be Stricken Because Defendants Do Not Allege Sufficient Facts

The Court should strike Affirmative Defense 10 contending that "Plaintiff's claims are barred . . . by failure and/or lack of consideration" because Defendants do not allege any facts that would support such a defense.  Rather, all that Defendants allege is that some of the sales at issue were not made to Defendants, that ZSR's predecessor-in-interest directed Defendants to use the money owed to cover other joint costs and expenses, and that ZSR provided the ammunition "with an expectation of payment."  None of these allegations show any lack of consideration for any agreement, let alone the agreement alleged in the Complaint.  As such, the Court should strike Affirmative Defense 10.

### G. Affirmative Defense 12 Asserting Waiver And Abandonment Should Be Stricken As Redundant of Affirmative Defense 4

The Court should strike Affirmative Defense 12 contending that ZSR's "actions and conduct, and/or the actions and conduct of Yavaşçalar A.S., has waived and abandoned any and all claims" because it is redundant of Affirmative Defense 4, which similarly purports to assert, in-part, a defense of waiver, based on nearly identical factual allegations.  As such, the Court should strike Affirmative Defense 12.

### H. Affirmative Defense 15 For "Breach Of Contract Or Comparative Fault, Recklessness And/Or Culpable Conduct" Of ZSR Should Be Stricken As Redundant Of Affirmative Defense 6, And To The Extent Not Redundant, Because Defendants Do Not Allege Sufficient Facts

The Court should strike the portions of Affirmative Defense 15 asserting "breach of contract or comparative fault, recklessness and/or culpable conduct" because they are redundant

of Affirmative Defense 6 which asserts, in-part, that "actions of parties . . . [i.e., ZSR] caused or contributed to the alleged losses or damages, barring recovery." As to the remaining portion of Affirmative Defense 15 asserting "breach of contract," the Court should strike it because Defendants fail to allege the contract that ZSR allegedly breached, let alone how the alleged conduct constituted a breach of an unidentified agreement. As such, the Court should strike Affirmative Defense 15.

### I. Affirmative Defense 17 For A Set-Off Should Be Stricken Because Defendants Do Not Allege Sufficient Facts

The Court should strike Affirmative Defense 17 contending that "Defendants are entitled to a set-off for benefits, income and/or profits obtained by [ZSR] at the expense of Defendants" because defendants fail to allege any facts showing that ZSR obtained any benefits, income or profits at Defendants' expense. Rather all that is alleged is that ZSR directed that certain products be sold to a third party and that defendant engaged in "tortious conduct in the Counterclaim." But none of these allegations go to show any benefit, income, or profit at Defendants' expense. As such Affirmative Defense 17 should be stricken.

### J. Affirmative Defenses 18 To 22 Should Be Stricken Because They Are Attacks On ZSR's Prima Facie Case And Are Not Affirmative Defenses

The Court should strike Affirmative Defenses 18 to 22 because they are not affirmative defenses, but instead attacks on ZSR's prima facie case. "An affirmative defense" is a defense that "requires judgment for the defendant even if the plaintiff can prove his case by a preponderance of the evidence." *Merrill*, 2015 WL 4496101, at *1 (quoting *Wright*, 187 F.3d at 1303)). For that reason, "[a] defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense." *In re Rawson Food Service, Inc.*, 846 F.2d 1343, 1349 (11th Cir.1988). As the court in *Tsavaris v. Pfizer, Inc.* explained, so labeled "affirmative defenses" that just "attack the [] Complaint, either by denying the allegations outright or identifying a defect or

lack of evidence in [the plaintiff's] case," are not affirmative defenses.  310 F.R.D. 678, 682 (S.D. Fla. 2015); *see also Rosada v. John Wieland Homes and Neighborhoods, Inc.,* No. 3:09-cv-653-J-20MCR, 2010 WL 1249841, at *2 (M.D. Fla. Mar. 25, 2010) (explaining that an affirmative defense stating that complaint failed to state a cause of action is not an affirmative defense but is instead a denial as it alleges only a defect in a plaintiff's prima facie case) (citing  *Rawson,* 846 F.2d at 1349)).

Here, Affirmative Defenses 18 to 22 are nothing more than attacks on ZSR's prima facie case, and thus cannot be affirmative defenses.  Specifically, Affirmative Defenses 18, 20, 21, and 22 attest that ZSR "cannot establish," "cannot demonstrate," "cannot show," has "failed to allege," or "failed to establish" a claim element or fact, while Affirmative Defense 19 merely attest that there is "no evidence" of a certain element.  As such, the Court should strike Affirmative Defenses 18 to 22.[5]

### K. Affirmative Defenses 24 To 26 Should Be Stricken Because They Are Redundant Of Affirmative Defense 23

The Court should strike Affirmative Defenses 24 to 26 as redundant of Affirmative Defense 23 because each asserts the same defense in sum and substance—that ZSR lacks standing because it did not "legally and properly" obtain the rights of Yavaşçalar A.S., its alleged predecessor-in-interest.  *Compare* Affirmative Defenses 23 (ZSR "is not a proper or legal successor" because it "did not legally and properly obtain the rights" of its alleged predecessor-in-interest), 24 (ZSR "lacks standing" because it "did not legally and properly obtain the rights" of its alleged predecessor-in-interest), 25 (ZSR "illegally and unlawfully acquired the assets" of its alleged

---

[5] To the extent the Court declines to strike such affirmative defenses, they should instead be treated as specific denials.  *See, e.g., Maglione-Chenault v. Douglas Realty & Dev., Inc.*, No. 2:13-cv-811-Ftm-38CM, 2014 WL 1389575, at *3 (M.D. Fla. Apr. 9, 2014) (construing allegations labeled "affirmative defenses" as specific denials).

processor-in-interest), and 26 ("legal doctrine of comity cannot be applied to ZSR's claimed acquisition of" its predecessor-in-interests rights because ZSR "did not legally and properly obtain the rights").  As such, Affirmative Defenses 24 to 26 should be stricken as redundant.

### L. Affirmative Defense 27 For "Improper Reliance On Confidential Settlement Communications" Should Be Stricken Because This Court Already Rejected This Argument

The Court should strike Affirmative Defense 27 asserting that "Plaintiff's Complaint should be dismissed due to improper reliance on confidential settlement communications" because the Court already rejected this argument and it is not an affirmative defense.  *See* Dkt. 37 at 7–8.  Specifically, Defendants already sought to strike the alleged "settlement communications" from the Complaint in their motion to dismiss.  Dkt. 21 at 12.  As ZSR explained in its opposition, even if such materials constitute "settlement communications" (which they do not), a plaintiff may rely on such materials in its pleadings.  Dkt. 22 at 14–15.  This Court held, consistent with ZSR's arguments, that ZSR may rely on such materials in its pleadings.  Dkt. 37 at 7–8.  As such, the Court should strike Affirmative Defense 27 as not only wrong as a matter of law, but also as having already been decided by this Court.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss Counts I and II of Defendants' Counterclaims, and strike Defendants' Affirmative Defenses 3, 5, 7 (in-part), 8–10, 12, 15, 17–22, and 24–27.

Respectfully submitted,

By:    /s/ Matthew W. Olinzock
Mehmet Baysan (NY 4922159 – *pro hac vice*)
Matthew W. Olinzock (NY 4926846 – *pro hac vice*)
**BREEDING HENRY BAYSAN PC**
7 World Trade Center
250 Greenwich Street, 46th Floor
New York, NY 1006
Tel: 212-235-1127
Fax: 865-670-8536
mbaysan@bhblegal.com
molinzock@bhblegal.com

Ludmila Khomiak (FL 91757)
**THE CASAS LAW FIRM, PC**
Brickell Bayview Center
80 S.W. 8th Street, Suite 2000
Miami, FL 33130
Tel: 855-267-4457
mila@casaslawfirm.com

*Counsel for Plaintiff*

## CERTIFICATE OF PRE-FILING CONFERENCE

Pursuant to Local Rule 3.01(g), the undersigned certifies that he conferred in good faith on June 11, 2020 with counsel for Defendants by telephone regarding the above-referenced matters, but counsel for the parties were unable to agree on a resolution.

By:_____ /s/ Matthew W. Olinzock_____
           Matthew W. Olinzock

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of June 2020, I electronically filed the foregoing with the Clerk of Court using CM/ECF system, which automatically sends an electronic notification to all counsel of record and other CM/ECF participants.


By:   /s/ Matthew W. Olinzock
Matthew W. Olinzock