**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**AT FORT MYERS**

ZSR PATLAYICI SANAYI A.S.,

       Plaintiff,

    v.

MATTHEW SARAC,
SARAC DISTRIBUTORS LLC,
And YAVEX LLC,

       Defendants.

CASE NO.  2:19-cv-00864-SPC-MRM

## RESPONSE IN OPPOSITION TO PLAINTIFF'S PARTIAL MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES

NOW COME Defendants, Matthew Sarac, Sarac Distributors LLC, and Yavex LLC (hereafter collectively "Defendants"), pursuant to the Federal Rules of Civil Procedure and Local Rule 3.01, to submit this Response in Opposition to Plaintiff's Partial Motion to Dismiss Defendants' Counterclaims and Strike their Affirmative Defenses.

## INTRODUCTION

Plaintiff alleges this to be a "simple breach of contract claim" for goods sold, and is attempting to use this Court to eliminate any aspects of this case that might complicate what it desperately wishes to be a "straightforward" collections matter.  However, the indisputable facts and actions of Plaintiff and predecessor-in-interest, Yavaşçalar A.S. ("Yavaşçalar"), demonstrate that this dispute is not as simple as suggested.  This matter involves the sale of ammunition from Yavaşçalar to Sarac Distributors, which then attempted to sell it in the United States under the "Yavex" name.  Yavaşçalar knowingly and intentionally sold inferior quality ammunition to Sarac Distributors under the Yavex brand, which resulted in significant financial losses and damages to Sarac Distributors.  Further, Yavaşçalar illegally shipped the ammunition in Yavex USA boxes to prohibited third parties,

1

including banned and/or terroristic nations and groups. At Yavaşçalar's request, ammunition was also transferred to non-party 4T USA, LLC, which was partially owned by Yavaşçalar. Eventually, Yavaşçalar was seized by the Turkish government and supposedly transferred to Plaintiff ZSR. These facts form the basis of Defendants' Counterclaim and many of the affirmative defenses at issue.

Plaintiff has moved to dismiss Defendants' Counterclaim for tortious interference with existing contracts and tortious interreference with business relationships. Plaintiff does not seek to disturb Defendants' Counterclaim for breach of implied warranty substantively or for lack of jurisdiction. Plaintiff also seeks to strike numerous affirmative defenses.

For the reasons outlined below, Plaintiff's motion should be denied. Defendants have pled sufficiently detailed business relations and "identifiable" customers for its tortious interference claims. If the Court somehow finds the customer details to be lacking, the proper remedy is leave to plead further facts. Moreover, Defendants' claims for tortious interference are not subject to the economic loss rule and present viable theories distinct from the breach of implied warranty claim. Lastly, the tortious interference Counterclaim relates to the same ammunition transactions at issue in the lawsuit, for ammunition delivered to Defendants in Florida, sold by Defendants from Florida and damages sustained in Florida. As such, personal jurisdiction exists under Florida's long-arm statute and the due process requirements. Also, Defendants believe the affirmative defenses are properly pled and supported, viable, not improperly redundant, and as such, should not be stricken.

## FACTUAL BACKGROUND

Yavaşçalar, a Turkish company, exported numerous shipments of "Yavex" brand ammunition to Sarac Distributors, Yavex LLC and/or non-party 4T USA, LLC.[1] (Dkt. 47, Def. Ans. &

---

[1] Defendants Sarac Distributors, Yavex, LLC, and Mr. Sarac maintain their principal places of business in Florida and conduct business in Florida. They, directly or through their independent companies, engage in the importation, distribution, and sales of firearms and/or ammunition. (Dkt. 47, ¶¶ 12-14, 17, 34).

Counterclaim ¶ 71). After receipt and attempted sales of the ammunition, it became apparent to Defendants that the ammunition was of poor quality and was manufactured using NATO standards, which is a military grade not permissible or acceptable for use by American consumers. (*Id*. at ¶¶ 73, 75). Yavaşçalar failed to manufacture the ammunition with consistent powder loads and case lengths, track the lots of components used to produce the ammunition and manufacture the ammunition in product lots. (*Id*. at ¶¶ 78-80). As a result of these deficiencies, prospective customers, large ammunition manufacturers and retailers who had longstanding relationships with Sarac have either ceased conducting business with Sarac, elected not to purchase ammunition, greatly delayed their decisions to purchase ammunition, or required Sarac to provide free samples as a pre-condition to purchase. (*Id*. at ¶¶ 82, 83). Thus, the value and ability to sell the ammunition was greatly diminished and Sarac was forced to expend significant time, effort and money to try to market and sell the ammunition. (*Id*. at ¶¶ 73, 81). Not only was Sarac compelled to sell the ammunition at a low price point, but Sarac was also prevented from pursuing other business ventures and, resultantly, sustained significant financial losses. (*Id*. at ¶¶ 84, 86).

Additionally, Yavaşçalar illegally and unlawfully shipped and/or attempted to ship "Yavex" brand ammunition in Yavex USA boxes to prohibited countries, such as Libya, but the shipment was ultimately seized. (*Id*. at ¶¶ 88). This sordid history is further compounded by the arrest of Ismail Yavaşça, owner of Yavaşçalar and suspected supporter of the Gülen faction's attempted overthrow of the Turkish government in July 2016. (*Id*. at ¶¶ 95-97). Following his arrest, Yavaşçalar was seized by the Turkish government. (*Id*. at ¶ 98). These events were publicized throughout the internet including Sarac's current and prospective customers alike, resulting in death threats, negative publicity and loss of business for Defendants. (*Id*. at ¶¶ 89-91, 93, 99). Following these events, plaintiff ZSR Patlayici Sanayi A.S., a Turkish joint stock company, allegedly acquired the assets and liabilities of Yavaşçalar and became its successor. (Dkt. 39, Pltf. Compl., ¶¶ 1-4). As a result of

Yavaşçalar's illegal actions and the public reporting of same, Sarac and Mr. Sarac sustained great financial loss, decreased profits, loss of business, loss of profits, harm to the Yavex USA brand, and harm to the reputation of Mr. Sarac and Sarac Distributors.  (Dkt. 47, ¶¶ 85, 94).

## **LEGAL STANDARD**

### I.  **MOTION TO DISMISS**

Federal Rule of Civil procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  For survival on a motion to dismiss, a complaint need only contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff [or counter-plaintiff] pleads factual content that allows the court to draw the reasonable inference that the defendant [or counter-defendant] is liable for the misconduct alleged." *Id.* This requirement gives the opposing party "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." *Geter v. Galardi S. Enterprises, Inc.*, 43 F. Supp. 3d 1322 (S.D. Fla. 2014) (internal citations omitted).

The Court must accept all of the counter-plaintiff's factual allegations as true in determining whether a counter-plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The factual allegations must also be construed "in the light most favorable to the [counter-]plaintiff." *GO Traders, S.A. v. Intertex Miami, LLC*, 2018 WL 7287151, at *1 (S.D. Fla. Oct. 24, 2018) (citing *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon*, 467 U.S. at 73.

## II. MOTION TO STRIKE

Rule 12(f) allows courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Fed. R. Civ. P.* 12(f). Motions to strike are generally disfavored due to their drastic nature. *Hamblen v. Davol, Inc.*, 2018 WL 1493251, at *3 (M.D. Fla. 2018); *Heath v. Deans Food T.G. Lee*, 2015 WL 1524083, at *2 (M.D. Fla. Apr. 2, 2015). Such motions "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Poston v. American President Lines, Ltd.*, 452 F. Supp. 568, 570 (S.D. Fla. 1978) (citing *Augustus v. Board of Public Instruction*, 306 F.2d 862 (5th Cir. 1962)). Absent a showing of prejudice, a motion to strike does nothing to advance the litigation, and the Court will not strike allegations "to merely polish the pleadings." *Deatherage v. Experian Information Solutions, Inc.*, 2020 WL 1974223, at *1 (M.D. Fla. 2020); *see also Michael v. Clark Equipment Co.*, 380 F.2d 351, 352 (2d Cir. 1967). An affirmative defense that is stricken because of a technical deficiency should be allowed to be replead. *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 684 (M.D. Fla. 2002).

## LEGAL ARGUMENT

## I. MOTION TO DISMISS

### A. THE COUNTERCLAIM SUFFICIENTLY ALLEGES TORTIOUS INTERFERENCE CAUSES OF ACTION

A tortious interference counterclaim need only meet the requirements of FRCP 8(a)(2), setting forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *Proctor & Gamble, Co. v. Haugen*, 222 F.3d 1262, 1279 (10th Cir. 2000). Under Florida law, a counterclaim must allege the following elements to state a claim for tortious interference with a contractual or business relationship: 1) the existence of a business relationship under which the plaintiff has legal rights; (2) an intentional and unjustified interference with the relationship; and (3) damage to the plaintiff as a result of the tortious interference with that

relationship. *See Ad–Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corp.*, 849 F.2d 1336, 1348–49 (11th Cir. 1987) (citations omitted); *Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla. 1985). The thwarted business relationship need not be evidenced by an enforceable contract. *United Yacht Brokers, Inc. v. Gillespie*, 377 So.2d 668 (Fla. 1979).

The contours of what defines a sufficient business relationship to state a tortious interference claim have been heavily litigated. Relationships with the "community at large" are inadequate. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla.1994) (citation omitted). To establish a claim for tortious interference, the plaintiff "must prove a business relationship with identifiable customers." *Ferguson Transp., Inc. v. North American Van Lines, Inc.*, 687 So.2d 821, (Fla. 1996). At the pleadings stage, what is considered identifiable customers is a low bar. A complaint may be drafted "at a high order of abstraction" and "not specifically identify each of the relationships allegedly interfered with" and still show the claim is not predicated upon relationships with the community at large. *Future Tech International, Inc. v. Tae Il Media, Ltd.*, 944 F.Supp. 1538, 1570 (S.D. Fla. 1996). *See, e.g., Merrill Lynch Bus. Fin. Services, Inc. v. Performance Mach. Sys. U.S.A., Inc.,* 2005 WL 975773, at *6 (S.D. Fla. 2005) (exclusive rights to distribute products in the United States is a sufficient business relationship to state a tortious-interference claim); *Nautica Intern.,Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1345 (S.D. Fla. 1998) (allegation of contracts for sale to unspecified foreign government is a sufficient pleading for tortious-interference claim).

Here, Plaintiff takes issue only with the identification of the existence of the alleged contractual or business relationships that were interfered with, arguing that they must be "identified" in order to survive dismissal. However, in order to survive a motion to dismiss, Defendants merely need to show such relationships and contracts are **identifiable**.[2] It is not required to identify

---

[2] Merriam Webster defines "identifiable" as "capable of being identified." *See* https://www.merriam-webster.com/dictionary/identifiable.

customers by name in the pleadings. *USI Ins. Servs. LLC v. Simokonis*, No. 15-CV-24337, 2016 WL 11547701 (S.D. Fla. Apr. 15, 2016), *report and recommendation adopted*, No. 15-24337-CIV, 2016 WL 11547699 (S.D. Fla. May 13, 2016). The specific customers at issue do not need to be named so long as the allegations concerning the business relationships are sufficient. *Drenberg v. FocusA (3)27 On Sur., LLC*, No. 6:13-CV-1351-ORL-37, 2013 WL 6768667 (M.D. Fla. Dec. 20, 2013). A tortious interference claim is plausible when the customers or prospective customers referenced in the complaint would be "identifiable through discovery." *Total Mkt. Techs., Inc. v. Angel Medflight Worldwide Air Ambulance Servs., LLC*, No. 8:10–cv–2680–T–33TBM, 2012 WL 33150, at *3 (M.D.Fla. Jan.6, 2012).

Defendants have sufficiently pled the elements of a tortious interference claim including "identifiable" contractual and business relationships that were impacted and/or harmed by the claimed tortious conduct. Specifically, the Counterclaim identifies that the sub-standard ammunition and improper shipments caused "U.S. customers, including certain large ammunition manufacturers and retailers with whom Sarac regularly conducted business, including regular business for the "Yavex" brand ammunition" not to purchase the ammunition, to cease conducting business with Sarac Distributors, to renege on agreements to purchase the ammunition, to obtain discounts to purchase the ammunition, to provide free samples for testing, etc. (Dkt. 47, ¶¶ 82-84; 105-109.) Clearly, Defendants have asserted identifiable customers as opposed to general business or community relationships. Though Defendants did not include specific customer names, which are not required, the Counterclaim shows that identifiable contractual and business relationships were harmed by the alleged tortious acts. While Plaintiff may disagree with the factual allegations pled, that is not grounds for dismissal pursuant to Rule 12(b)(6). The requirements of a well-pled Complaint do not necessitate the relationships be identified in the Complaint itself; this is the purpose of the discovery

process. Defendants have met the requirements for a well-pled Counterclaim, and Plaintiff's motion must be denied.

**B. LEAVE TO AMEND THE TORTIOUS INTERFERENCE COUNTERCLAIM IS REQUESTED SHOULD THE COURT FIND MERIT IN PLAINTIFF'S ARGUMENTS**

"A district court's discretion to dismiss a complaint without leave to amend is severely restricted by Fed. R. Civ. P. 15(a), which directs that leave to amend shall be freely given when justice so requires." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citations omitted). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave [to amend] sought should, as the rules require, be freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court cannot nullify the liberal right to amend under Rule 15(a)(2) by entering judgment prematurely at the same time it dismisses the complaint that would be amended." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 522 (7th Cir. 2015).

Here, Plaintiff's arguments regarding the insufficiency of Defendants' tortious interference Counterclaim relate to the lack or insufficiency of the facts pled. Plaintiff argues that Defendants fail to identify specific customers; not that such customers do not exist or cannot be identified. Plaintiff is also not alleging that the causes of action are improper or invalid in Florida law. As such, should the Court determine that specific customers and business relationships need to be more specifically identified, Defendants respectfully request leave at this early stage to amend their Answer, Counterclaim, and Affirmative Defenses. Granting leave to amend would not cause any undue prejudice to the parties and there has been no "repeated failure to cure deficiencies."

## C. THE ECONOMIC LOSS RULE DOES NOT APPLY TO TORTIOUS INTERFERENCE CLAIMS

In 2013, the Florida Supreme Court departed from precedent, receding from prior rulings that had expanded the economic loss doctrine well beyond its origins in a string of decisions the Court found were "unwise and unworkable in practice." *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 407 (Fla. 2013). In doing so, the Court determined that the economic loss rule applies only in the products liability context. *Id.* ("Having reviewed the origin and original purpose of the economic loss rule, and what has been described as the unprincipled extension of the rule, we now take this final step and hold that the economic loss rule applies only in the products liability context."). The Court held that expanding the economic loss rule beyond its product liability origin "was unwise and unworkable in practice." *Id.* ("Thus, today we return the economic loss rule to its origin in products liability.") Here, based on *Tiara*, the economic loss rule is inapplicable to Defendants' tortious interference claims.

Moreover, although not directly argued by Plaintiff, to the extent it is being claimed the tortious interference claim is not "independent" of Defendants' breach of warranty claim, that would also be untrue post-*Tiara*. *See F.D.I.C. v. Floridian Title Grp. Inc.*, 972 F. Supp. 2d 1289, 1298 (S.D. Fla. 2013) ("Defendant is apparently operating under the assumption that it can unilaterally rebrand the Economic Loss Rule as the Inextricable Intertwining Rule and that the Court will buy this otherwise defective product."); *Getchell v. Suntrust Bank*, 2016 WL 740603, at *4 (M.D. Fla. Feb. 25, 2016). Nevertheless, the claims are independent and require different proof such as proof of "intentional and unjustified interference" for tortious interference. *See Tran Chiropractic Wellness Ctr., Inc. v. Aetna Inc.*, 2015 WL 2026681, at *5 (M.D. Fla. Apr. 30, 2015); *Future Tech Int'l. Inc. v. Tae II Media, Ltd.*, 944 F. Supp. 1538, 1568-69 (S.D. Fla. 1996). Also, Fed.R.Civ.P. 8(d) allows a party to plead alternative claims for relief, even if those claims are inconsistent. *Id.*

## D. THERE IS PERSONAL JURISDICTION OVER PLAINTIFF

### a. The Counterclaim is Compulsory Because it Arises Out of the Transactions and Occurrences that Gave Rise to Plaintiff's Suit

When a party files suit in Florida, they subject themselves to personal jurisdiction to litigate all related issues. *See e.g.*, *Edwards v. Johnson*, 569 So. 2d 473, 474 (Fla. 1st DCA 1990) (cited by Plaintiff for the same proposition); *see also Adam v. Saenger*, 303 U.S. 59, 67–68 (1938) (holding that a counterclaim arising from the same transaction or occurrence as the original claim is subject to the jurisdiction of the forum where the original suit was brought).

Rule 13(a) defines a compulsory counterclaim as any claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(a). Courts use the "logical relationship" test when determining whether a counterclaim is compulsory. *See United States v. Aronson*, 617 F.2d 119, 121 (5th Cir.1980). Under this test, there is a logical relationship when "the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Plant v. Blazer Financial Services, Inc.*, 598 F.2d 1357, 1361 (5th Cir.1979). Florida courts encourage a "broad, realistic interpretation" of the compulsory counterclaim rule allowing the foreclosure of possibly duplicative litigation. *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1381 (11th Cir.1991).

The Eleventh Circuit, in determining whether counterclaims are compulsory, has adopted the a four-factor test: (1) Are the issues of fact and law raised by the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on defendants' claim absent the compulsory counter claim rule? (3) Will substantially the same evidence support or refute plaintiffs claim as well as defendant's counterclaim? (4) Is there any logical relation between the claim and counterclaim? *Beepot v. J.P. Morgan Chase Nat'l. Corporate Servs.*, 57 F.Supp.3d 1358, 1370 (M.D.Fla.2014); *Montgomery Ward*, 932 F.2d at 1381; *Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755

F.2d 1453, 1455 (11th Cir. 1985). An affirmative answer to **any** of the foregoing questions would mean that the counterclaim is compulsory. *Montgomery Ward*, 932 F.2d at 1381.

Here, Plaintiff intentionally takes a narrow view of the Counterclaim, focusing its personal jurisdiction argument only on the "arms shipments and political events in Turkey, Greece, and other foreign countries." However, the Counterclaim is far broader than this issue. Looking at the totality of the Counterclaim, it is plain that there is a logical relation between Plaintiff's claims and Defendants' Counterclaim. The Counterclaim explicitly alleges that Plaintiff's actions interfered with Defendants' business relationships and contractual agreements **for the sale of the very ammunition for which Plaintiff is now seeking payment**. The Counterclaim largely relates to quality and other issues with the same ammunition in Plaintiff's claim.

While Defendants' counterclaims necessarily include additional facts, the underlying issues are largely the same. This is a dispute over the manufacture, export, and sale of ammunition branded with the Yavex name. Defendants encountered complications selling Yavex ammunition as a direct result of Plaintiff's actions which had a negative economic impact on Defendants – thus giving rise to the necessity of the Counterclaim. Discovery for all matters will necessarily overlap, as it all relates to the manufacture, export, and sale of the Yavex ammunition. As such, by applying the above outlined four-factor test, the counterclaims are compulsory and jurisdiction is proper.

**b. Jurisdiction is Proper Over the Counterclaim Regardless of Whether It Is Compulsory or Permissive**

Plaintiff appears to take the odd position that even though there is personal jurisdiction over it for most of Defendants' tortious interference causes of action and for Defendants' cause of action for breach of implied warranty, there is no personal jurisdiction for the alleged tortious conduct related to illegal shipments. Even taking this improperly narrow view, Plaintiff concedes that the Counterclaim satisfies Florida's long-arm statute but argues that the illegal shipment portion of the tortious interference Counterclaim fails the minimum contacts analysis. This argument is misguided

since, as addressed below, the minimum contacts analysis looks at the totality of the contacts with Florida, not contacts for each specific allegation. Here, in totality, Plaintiff has minimum contacts with the state of Florida for purposes of the Counterclaim.

For a court in Florida to exercise personal jurisdiction over a party not located in the state, Florida's long-arm statute (Florida Statutes §48.193) must reach the party and the party must have sufficient contacts with the state such that the exercise of jurisdiction would not offend due process. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). Personal jurisdiction is established using Florida's long-arm statute through a two-step process. First, §48.193 must authorize the basis of jurisdiction, and second, that basis must meet the constitutional requirement of due process. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989).

### i.    *The Counterclaim Allegations are sufficient to establish Long-Arm Jurisdiction in Florida*

Under Eleventh Circuit precedent, allegations of tortious acts that caused injury in Florida are sufficient to establish long-arm jurisdiction. *See Florida. Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216–17 (11th Cir.1999); *TSM Technology Management, Inc. v. Benowitz*, 2015 WL 1311016, at *3-4 (M.D. Fla. March 24, 2015) ("To establish a prima facie case of long-arm jurisdiction, Plaintiffs must only allege tortious actions taken by Blackstone that, if true, would have caused injury to Plaintiffs in Florida.  Plaintiffs have done so."); *H.E.R.O., Inc. v. Self*, 2012 WL 1802431, at *5 (S.D. Fla. May 17, 2012) ("[T]he real effects of [Defendant's] alleged infringement, disparagement, and tortious interference would be felt where the Plaintiffs ... reside and conduct business—which, in this case, is Florida.")

Here, as Plaintiff concedes, Defendants have asserted tortious inference claims and a breach of implied warranty claim resulting in injury and damage to Defendants, who are all Florida residents and Florida businesses.  (Dkt. 47, ¶¶ 5-6, 12-15.). Thus, as Plaintiff concedes, the Counterclaim allegations are sufficient to establish long-arm jurisdiction in Florida.

*ii.*     *The Counterclaim Allegations Comport with Due Process*

Next, the exercise of personal jurisdiction over Plaintiff must comport with due process. Due process is satisfied if there are sufficient "minimum contacts" between the non-resident party and Florida such that maintaining the suit in Florida "does not offend traditional notions of fair play and substantial justice." *Ga. Insurers Insolvency Pool v. Brewer*, 602 So. 2d 1264, 1268 (Fla. 1992) (citation omitted). In analyzing this issue, Florida courts consider the foreseeability that the party's conduct would result in the filing of a suit in Florida and the party's purposeful availment of Florida's privileges and protections. *Id.* "In a case involving specific jurisdiction, a defendant's contacts with the forum state must satisfy three criteria:" (1) "they 'must be related to the plaintiff's cause of action or have given rise to it;' " (2) "they must involve 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum;' and" (3) "they 'must be such that the defendant should reasonably anticipate being haled into court there.'" *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir.2007).

Here, as Plaintiff concedes through its Motion, Defendants have already established minimum contacts. The tortious interference claims relate to Plaintiff's sale and shipment of ammunition of sub-standard quality to Defendants in Florida, and the breach of implied warranty claim also relates to such ammunition shipments to Defendants in Florida. Plaintiff does not even attempt to argue lack of minimum contacts related to the causes of action. Instead, Plaintiff makes the narrow argument that minimum contacts are lacking for the part of the tortious interference claim related to illegal ammunition shipments that were seized in Greece. Plaintiff appears to make the argument that minimum contacts is not just needed over it, but is required for each and every claim, part of a claim, or factual allegation. This is incorrect.

For due process, the analysis required is "whether there are sufficient minimum contacts between the [party] and Florida to satisfy the Fourteenth Amendment's due process requirements."

*Gustin v. Hoffman*, 2008 WL 11335080, at *1 (M.D. Fla. July 29, 2008) (citing Woodard Chevrolet, Inc. v. Taylor Corp., 949 So. 2d 268, 270 (Fla. 4th DCA 2007)). Only one significant contact or act is required to establish the necessary minimum contacts. *Fidelity Nat. Information Services, Inc. v. Veen*, 2009 WL 3112097, at *4 (M.D. Fla. Sept. 28, 2009). Due process does not require every act or every part of the claim to relate to contacts with Florida. *Id.* ("Resolution of the minimum contacts issue depends whether the case "arises out of" or "relates to" the defendant's contacts with Florida."). Instead, the Court should look into the "totality of the circumstances" in evaluating the contacts. *See e.g.*, *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir.2010). Moreover, for intentional acts, the "effects" for due process is satisfied when the claim is brought in the forum where the "effects" or "brunt of the harm" caused by the intentional tortious activity was suffered. *See e.g.*, *Licciardello v. Lovelady*, 544 F.3d 1280, 1285–87 (11th Cir.2008). The totality of the due process analysis is focused on fairness. *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 476 (1985).

Here there is no dispute that the totality of Plaintiff's contacts with Florida is sufficient for personal jurisdiction. Ample contacts exist through Plaintiff accepting orders from Defendants in Florida, shipping ammunition to Florida, shipping sub-quality ammunition to Florida, breaching implied warranties for the ammunition shipped to Florida, causing damages to Defendants in Florida and filing a lawsuit for payment for the subject ammunition in Florida. The notion that Plaintiff could not possibly foresee its conduct resulting in the filing of a Florida lawsuit is an indefensible position. The totality of Plaintiff's contacts makes it fair and equitable for the Court to exercise jurisdiction over Plaintiff for the Counterclaim.

Moreover, if the Court were to consider only the alleged illegal shipments, such intentional acts are most likely to have an effect where the Yavex USA ammunition is sold, which is out of Florida, and on the Defendants selling such ammunition out of Florida. Defendants have specifically alleged such individual harm in Florida. (Dkt 47, ¶¶ 90-94). It is the totality of the relationship

14

between Plaintiff and Defendants, and the alleged contracts or agreements for the sale and shipment of ammunition to Florida (at issue here in Plaintiff's lawsuit), which led to Plaintiff producing and shipping ammunition in Yavex USA boxes, including the alleged eventual illegal shipments at issue. According, the Court has jurisdiction over Plaintiff for all aspects of the Counterclaim.

## II.   MOTION TO STRIKE

Defendants have asserted a Counterclaim that includes thirty (30) paragraphs of detailed factual allegations. The allegations were expressly incorporated into the affirmative defenses and further specificity was provided as to each individual affirmative defense. Based on the dealings between the parties related to the ammunition, Defendants clearly have multiple relevant and viable affirmative defenses in this matter, and Plaintiff has more than sufficient notice of the potential factual bases of the affirmative defenses given the extent of Defendants' pleadings.

Substantively, as addressed further below, the affirmative defenses at issue are legally cognizable, relevant to Plaintiff's claims (and Defendants' Counterclaim), and contain more than sufficient supporting facts to provide notice as to the basis for each affirmative defense. Moreover, at the very least, any of the defenses that are found not to be "true" or "customary" affirmative defenses, should properly be considered specific denials that need not be stricken or that may otherwise be permitted to be replead.

### A.  Affirmative Defenses 3, 8, 12, 24, 25, and 26 Are Not Redundant

Plaintiff seeks dismissal of Affirmative Defenses 3, 8, 12, 24, 25 and 26 on the basis that these affirmative defenses are redundant.  With respect to the striking of a pleading of an affirmative defense that is "redundant, immaterial or impertinent or scandalous," it must be considered whether the affirmative defense is relevant or influential to the matter at issue.  *Chris Craft Industries, Inc. v. Van Valkenberg*, 267 So.2d 642, 645 (1972).  Affirmative defenses that are claimed to be redundant or immaterial may be stricken only if they are "wholly irrelevant and can have no bearing on the

equities and no influence at all on the decision." *Bay Colony Office Bldg. Joint Venture v. Wachovia Mortg. Co.*, 342 So.2d 1005, 1006 (Fla. 4th DCA 1977); *see Gossett v. Ullendorff*, 114 Fla. 159, 154 So. 177 (1934); *Pentecostal Holiness Church, Inc. v. Mauney*, 270 So.2d 762 (Fla. 4th DCA 1972). Moreover, because a motion to strike only tests the legal sufficiency of a claim, it is reversible error for a court to grant a motion to strike where the pleading presents a bona fide issue of fact that may be supported by evidence. *See Gonzalez v. NAFH Nat'l Bank*, 93 So.3d 1054, 1057 (Fla. 3d DCA 2012). For the reasons argued below, the cited affirmative defenses are not redundant and should not be stricken.[3]

### i. Affirmative Defense Number 3.

3. *Plaintiff's damages were the result of the act or acts of a third person or persons over whom Defendants had no control…*

Plaintiff seeks dismissal of the third affirmative defense as redundant to the sixth affirmative defense, which states in relevant part "Independent, intervening, and superseding forces and/or actions of parties or third parties proximately caused or contributed to the alleged losses or damages, barring recovery from Defendants." However, the distinction between these two affirmative defenses is stated plainly. Affirmative defense number 3 refers solely to the acts of third parties, whereas affirmative defense number 6 refers to "independent, intervening and superseding forces" which are not necessarily the result of any action by a third party. While these defenses are supported by overlapping facts referenced in the Counterclaim, such as the poor quality of ZSR's products, each respective defense concerns different causes of harm to Plaintiff. As such, these defenses are sufficiently distinct and relevant, and cannot be the subject of a motion to dismiss. Moreover, even if the Court found some redundancy, it would not be proper to dismiss both affirmative defenses at issue.

---

[3] As Plaintiff's argument as to affirmative defenses 3, 8, 12, 24, 25 and 26 concerns alleged redundancy and not a dispute over factual sufficiency, the factual support sections of such affirmative defenses have been omitted

### ii.    Affirmative Defense Number 8.

Affirmative defense number 8 states "Plaintiff's claims are barred to the extent that they engaged in unlawful, inequitable, or improper conduct." Plaintiff asserts that affirmative defense number 8 is redundant to affirmative defense number 7, which states that "Plaintiff's alleged causes of action therein are barred by the equitable doctrines of laches, unclean hands, fraud and illegality, res judicata, and/or estoppel." Plaintiff appears to take issue with the fact that each of these affirmative defenses reference the similar terms "illegal" or "unlawful." However, affirmative defense number 8 should not be stricken in its entirety as it is not limited solely to lawful or unlawful conduct, but inequitable or improper conduct that does not necessarily fall within the doctrines cited in affirmative defense number 7, and which should, as a matter of equity, result in the preclusion of Plaintiff's claims. As such affirmative defense number 8 should not be stricken.

### iii.    Affirmative Defense Number 12.

*12.    Plaintiff, by its actions and conduct, and/or the actions and conduct of Yavaşçalar A.S., has waived and abandoned any and all claims as alleged herein against Defendants…*

Plaintiff argues affirmative defense number 12 is redundant as to affirmative defense number 4 because it asserts a waiver defense. However, abandonment and waiver are two distinct defenses. While waiver involves the relinquishment of a right where a person has knowledge of a right and acts inconsistent with it, abandonment is a separate defense that concerns conduct inconsistent with validity of a contract which renders the contract unenforceable. *See e.g.*, *Mike Bradford & Co. v. Gulf States Steel Co.*, 184 So. 2d 911, 915 (Fla. 3d DCA 1966) (waiver of arbitration by answering without seeking arbitration); *Maruri v. Maruri*, 582 So. 2d 116, 117 (Fla. 3d DCA 1991); *Plant v. Plant*, 320 So. 2d 455, 457 (Fla. 3d DCA 1975 (abandonment of contract by failing to obtain insurance policy for benefit of other party as required by contract); *Sinclair Refining Co. v. Butler*, 172 So. 2d 499, 502 (Fla. 3d DCA 1965). Accordingly, as waiver and abandonment are two separate defenses, affirmative defenses 4 and 12 are distinct and should not be stricken.

### iv.  Affirmative Defense Number 15.

15.  *The damages alleged in the Complaint, if any, were caused by the breach of contract or comparative fault, recklessness and/or culpable conduct of the Plaintiff and, by reason thereof, Plaintiff is not entitled to judgment, and pleading in the alternative, any award or judgment in favor of the Plaintiff should be diminished in proportion to the breach of contract, comparative fault, recklessness and/or culpable conduct attributable to the Plaintiff compared to the breach or culpable conduct, if any, of Defendants and/or any non-parties.*

Plaintiff alleges that affirmative defenses number 15 and 6 are redundant, with number 6 stating that "actions of parties or third parties proximately caused or contributed to the alleged losses or damages, barring recovery from Defendants."  However, these affirmative defenses are different in that affirmative defense number 15 refers to allocation of fault against parties based on their percentage of fault, whereas affirmative defense number 6 concerns complete preclusion of liability against Sarac due to independent, intervening and superseding forces.  As such, these defenses are not redundant and Plaintiff's request that that either of these defenses be stricken should be denied.

### v.  Affirmative Defenses Number 24, 25, 26.

24.  *Plaintiff lacks standing to pursue this action. Defendants assert that since Plaintiff did not legally and properly obtain the rights to, and interest in, Yavaşçalar A.S., it lacks standing to bring this action.*

25.  *Plaintiff illegally and unlawfully acquired the assets of Yavaşçalar A.S. As further addressed in its motion to dismiss, Defendants assert that Plaintiff did not legally and properly obtain the rights to, and interest in, Yavaşçalar A.S.*

26.  *The legal doctrine of comity cannot be applied to Plaintiff's claimed acquisition of Yavaşçalar A.S. Defendants assert that since Plaintiff did not legally and properly obtain the rights to, and interest in, Yavaşçalar A.S., through actions that would be recognized as legal and proper under applicable law, the legal doctrine of comity cannot be applied to such acquisition.*

Defendants concede that the relief requested in affirmative defense number 25 is similar to that requested in affirmative defense number 24, and Defendants respectfully withdraw affirmative defenses 25.  As for affirmative defenses number 24 and 26, these defenses are not redundant as they argue two separate points.  Affirmative defense number 24 indicates that Plaintiff lacks standing due to its unlawful acquisition of Yavaşçalar's assets, and affirmative defense number 26 refers to

Plaintiff's inability to establish legal reciprocity of jurisdictions due to its unlawful acquisition. These defenses rely on the same underlying facts but ultimately are distinct defenses. Accordingly, neither affirmative defense 24 or 26 should be stricken.

### B. Affirmative Defenses 5, 7, 9, 10, 15, and 17 Allege Sufficient Facts to Withstand a Motion to Strike

In addition to motions to strike being disfavored by the Court, a motion to strike an affirmative defense should not be granted merely because the responding party presents opposing facts. *Great American Assur. Co. v. Sanchuk, LLC*, No. 8:10-cv-2568-T-33AEP, 2012 WL 1656751, at *3 (M.D. Fla. May 10, 2012). To survive a motion to strike, all that must be shown is that the defense in question presents a relevant and substantial factual question that sufficiently apprises the other party of what will be argued. *Id*. at *2. An affirmative defense should not be stricken where the defense presents a bona fide question of law or fact. *Royal Palm Sav. Ass'n. v. Pine Trace Corp.*, 716 F.Supp. 1416, 1420 (M.D. Fla. 1989); *A.M. Kidder & Co. v. Turner*, 106 So.2d 905, 906 (Fla.1958).[4]

### i. Affirmative Defense Number 5.

5.   *Plaintiff failed to mitigate, obviate, diminish, or otherwise act to lessen or reduce their alleged damages, and Plaintiff's claims are otherwise barred, in whole or in part, by the doctrine of avoidable consequences. Specifically, Defendants reference their Counterclaim allegations about the quality of the products, improper shipments of products, and sales issues with third-party customers that was not timely addressed or corrected by Yavaşçalar A.S. With Yavaşçalar A.S.'s knowledge and approval, some of the ammunition was sold by Defendants at a loss and/or for no or minimal profit, yet Plaintiff still seeks full recovery. In addition, to the extent that Yavaşçalar A.S. agreed to a lesser payment amount, Plaintiff cannot now seek recovery for the full claimed amount due.*

Plaintiff claims that affirmative defense number 5 fails to present any facts in support of "the issues of mitigation, obviation diminishment, reduction in damages or avoidable consequences." However, Defendants' answer refers to its Counterclaim which sets forth facts demonstrating how

---

[4] To the extent the Court finds the defenses to have insufficient supporting facts, Defendants respectfully request leave to amend the defenses to include further/additional facts.

Plaintiff failed to mitigate its damages, including by: (1) providing poor and substandard quality ammunition which was required to be sold at a lower price point (Dkt No.47, ¶¶ 73-78); and (2) and engaging in illegal shipments overseas which, once discovered, increased Sarac's difficulty in selling Plaintiff's already substandard ammunition (*Id*. at ¶93). The continued sale of defective ammunition and participation in illegal shipments demonstrates Plaintiff's failure to "undertake measures to avoid damages that are available to him without undue effort or expense." *Forbes v. Prime General Contractor's, Inc.*, 255 So.3d 448, 452 (Fla. 2d DCA 2018). As such, Plaintiff's requested relief as to affirmative defense 5 should be denied.

### ii.    Affirmative Defense Number 7.

7.    *Plaintiff's alleged causes of action therein are barred by the equitable doctrines of laches, unclean hands, fraud and illegality, res judicata, and/or estoppel. Specifically, Defendants reference their Counterclaim allegations about the quality of the products, improper shipments of products, and sales issue with third-party customers. With Yavaşçalar A.S.'s knowledge and approval, some of the ammunition was sold by Defendants at a loss and/or no or minimal profit. Also, part of the money allegedly owed to Plaintiff is the result of Yavaşçalar A.S. authorized ammunition sales by 4T USA, LLC, which is partially owned by Yavaşçalar A.S. and/or its former owners, and with the agreement of Yavaşçalar A.S., the money for such sales is not due or owing from Defendants. In addition, to the extent that Defendants were instructed to utilize some of the income from the sale of ammunition to cover other joint costs and expenses of the parties, no money is owed. Defendants assert that Plaintiff's and/or Yavaşçalar A.S.'s tortious conduct asserted in the Counterclaim would be included as conduct barring Plaintiff's claims.*

Plaintiff claims that insufficient facts have been plead concerning fraud and res judicata in this affirmative defense. As to fraud, Sarac has pleaded sufficient facts against Plaintiff through the Counterclaim because Plaintiff's knowing exchange of subpar ammunition and illegal shipment of ammunition to Sarac's detriment, and without informing Sarac, could constitute fraud. *La Pesca Grande Charters, Inc. v. Moran*, 704 So.2d 710, 713 (Fla. 5th DCA 1998) (defining fraud as "a knowing false statement of fact made with the intent that it cause action in reliance and it does cause such action to the detriment of the victim of the knowing false statement."). As for the defense of res

judicata, Sarac withdraws this defense and reserves the right to raise it in the future as discovery on this matter progresses. Therefore, the fraud portion of the defense should not be stricken.

### iii.    Affirmative Defense Number 9.

9.    *Plaintiff's claims are barred, in whole or in part, by its own defaults and breaches of contract, directly or through Yavaşçalar A.S. Specifically, Defendants reference their Counterclaim allegations about the quality of the products, improper shipments of products, and sales issue with third-party customers. With Yavaşçalar A.S.'s knowledge and approval, some of the ammunition was sold by Defendants at a loss and/or no or minimal profit. Also, part of the money allegedly owed to Plaintiff is the result of Yavaşçalar A.S.'s authorized ammunition sales by 4T USA, LLC, which is partially owned by Yavaşçalar A.S. and/or its former owners, and with the agreement of Yavaşçalar A.S., the money for such sales is not due or owing from Defendants. In addition, to the extent that Defendants were instructed to utilize some of the income from the sale of ammunition to cover other joint costs and expenses of the parties, no money is owed.*

Plaintiff argues that this defense is not sufficiently pled because Defendants have not specifically identified "what contract ZSR allegedly defaulted on or breached," or how ZSR breached the contract. However, the Counterclaim unambiguously asserts that ZSR and Defendants entered into a contract under which Plaintiff improperly transferred of subpar and low-quality ammunition. (Dkt. 47, ¶¶ 73-78). In addition, this defense clearly asserts that Plaintiff and Defendants agreed that some of the ammunition would be transferred to non-party 4T USA, LLC, which is partially owned by Yavaşçalar A.S. and/or its former owners, and that no money would be due from Defendants for such ammunition. To the extent Plaintiff is now seeking money for such ammunition, it breached this agreement. This affirmative defense is sufficiently pled to put Plaintiff on notice of Defendants' position on the issue.

### iv.    Affirmative Defense Number 10.

10.    *Plaintiff's claims are barred, in whole or in part, by failure and/or lack of consideration. Defendants assert that some of the money allegedly owed to Plaintiff is the result of Yavaşçalar A.S.'s authorized ammunition sales by 4T USA, LLC, which is partially owned by Yavaşçalar A.S. and/or its former owners, and with the agreement of Yavaşçalar A.S., the money for such sales is not due or owing from Defendants. In addition, to the extent that Defendants were instructed to utilize some of the income from the sale of ammunition to cover other joint costs and expenses of the parties, no money*

*is owed. Ammunition and other products provided by Yavaşçalar A.S. to Defendants without an expectation of payment lack consideration.*

Plaintiff argues that this affirmative defense must be dismissed because there are insufficient facts supporting a lack of consideration defense. However, "a general averment of lack of consideration is consistent with the general rules of pleading contained in Fla. R. Civ. P. 1.110." *Howdeshell v. First. Nat. Bank of Clearwater*, 369 So.2d 432, 434 (Fla. 2d DCA 1979). Additionally, the Counterclaim unambiguously asserts a lack of consideration for the payment of money from the ammunition transferred to non-party 4T USA, LLC. Accordingly, this affirmative defense should not be stricken.

### v.   **Affirmative Defense Number 15.**

15.   *The damages alleged in the Complaint, if any, were caused by the breach of contract or comparative fault, recklessness and/or culpable conduct of the Plaintiff and, by reason thereof, Plaintiff is not entitled to judgment, and pleading in the alternative, any award or judgment in favor of the Plaintiff should be diminished in proportion to the breach of contract, comparative fault, recklessness and/or culpable conduct attributable to the Plaintiff compared to the breach or culpable conduct, if any, of Defendants and/or any non-parties.*

Plaintiff alleges that affirmative defense number 15 is factually deficient. However, the Counterclaim, which is incorporated the affirmative defenses, unambiguously asserts that ZSR and Defendants entered into a contract which, unknown to Sarac, involved the transfer of subpar and low-quality ammunition. (Dkt. 47, ¶¶ 73-78). As a result, Defendants sustained damages and did not obtain the promised-for items as agreed between the parties (i.e., quality ammunition). This affirmative defense is sufficiently pled to put Plaintiff on notice of Defendants' position on the issue.

### i.   **Affirmative Defense Number 17.**

17.   *Defendants are entitled to a set-off for benefits, income and/or profits obtained by Plaintiff at the expense of Defendants. Defendants assert that to the extent Plaintiff, through Yavaşçalar A.S., directed that its products be directed to third parties, such as 4T USA, LLC, and/or that  income from the sales of its products be used to cover other joint costs and expenses of the parties, Plaintiff cannot properly assert a claim for such products. Defendants also asserts that the tortious conduct asserted in the Counterclaim should eliminate, reduce or diminish Plaintiff's potential damages claimed in this matter.*

Plaintiff argues that this defense fails to provide any facts showing that Plaintiff obtained a benefit at Defendants' expense. However, the facts allege Defendants are entitled to a set-off for ammunition that Plaintiff instructed Defendants to transfer to non-party 4TUSA, LLC. If Plaintiff were permitted payment for the referenced ammunition from Defendants, it would obtain an unjust and unmerited benefit. Thus, set-off is a valid defense and serves the purpose of preventing a double recovery for Plaintiff.

### C. Affirmative Defenses 18, 19, 20, 21, and 22 Are Valid Affirmative Defenses, or May Otherwise Be Considered Specific Denials

Plaintiff seeks to strike affirmative defenses 18, 19, 20, 21, and 22 on the basis that they are not legally cognizable or technically correct affirmative defenses. However, if there is a legitimate dispute concerning the sufficiency of the proposed affirmative defenses, the Court "will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Poston*, 452 F.Supp. at 568. Indeed, Plaintiff essentially concedes by footnote to its motion that these asserted defenses should be considered denials of Plaintiff's allegations. Given Plaintiff's failure to show that the asserted defenses are wholly irrelevant, confusing or prejudicial, the proper remedy, if any, would be to treat any disputed paragraphs as denials, not to strike wholesale the cited defenses. *CI International Fuels, LTDA v. Helm Bank, S.A.*, No. 10-20347-CIV, 2010 WL 3368658, at *2 (S.D. Fla. 2010) ("Because this affirmative defense alleges a defect in the Plaintiffs' prima facie case, it will be treated as a denial."); *Pujals ex rel. El Rey De Los Habanos, Inc. v. Garcia*, 777 F. Supp.2d 1322, 1328 (S.D. Fla. 2011)("The proper remedy is not to strike the claim, but rather to treat it as a specific denial.").

#### i. Affirmative Defenses Number 18 and 20.

18.     *Plaintiff cannot establish one or more elements of its claims for breach of contract and/or promissory estoppel. To the extent that part of the money allegedly owed to Plaintiff is the result of Yavaşçalar A.S. authorized ammunition sales by 4T USA, LLC, which is*

23

*partially owned by Yavaşçalar A.S. and/or its former owners, and with the agreement of Yavaşçalar A.S., Plaintiff cannot properly assert a claim for such money. In addition, to the extent that Defendants were instructed to utilize some of the income from the sale of ammunition to cover other joint costs and expenses of the parties, Plaintiff cannot properly assert a claim for such money. Further, Defendants assert that no promise of payment and/or contract or agreement evidencing offer, acceptance and meeting of the minds related to payment by Defendants was ever reached between Defendants and Yavaşçalar A.S. Defendants also asset that confidential settlement discussions cannot form the basis for a payment agreement and/or promissory estoppel.*

20. *Plaintiff cannot demonstrate any element of reasonable reliance by the Plaintiff upon the Defendants' conduct that would indicate any basis for piercing the corporate veil or demonstrate damages incurred by Plaintiff which were proximately caused by Mr. Sarac in an individual capacity.*

These affirmative defenses are self-explanatory and state that Plaintiff is unable to meet the requirements and/or elements necessary to bring a breach of contract or promissory estoppel cause of action, or to pierce the corporate veil. If the Court finds these defenses not to be "true" affirmative defenses by definition, they should instead be treated as denials, not stricken. *Vance v. Westfalia Technologies, Inc.*, 2013 WL 3270414, at *3 (M. D. Fla. June 6, 2013) ("The Fourth Affirmative Defense, stating the Defendants did not have a duty, is in fact a denial of an element of the Plaintiffs' claim of negligence. Therefore, the defense will not be stricken, but rather treated as a denial.")

### ii. Affirmative Defenses Number 19, 21, 22.[5]

19. *There is no evidence of any of the bases for piercing the corporate veil alleged by Plaintiff, nor any evidence to demonstrate how the same sanctioned a fraud or promoted injustice toward the Plaintiff.*

21. *Plaintiff has failed to allege and cannot show any causal connection between the way Sarac Distributors and/or Yavex were capitalized or operated and the subsequent inability to pay the obligation allegedly owed to Plaintiff.*

These affirmative defenses are self-explanatory and advise that Plaintiff will be unable to establish critical components of its claims. The "facts" supporting each of these defenses is Plaintiff's

---

[5] Affirmative defense 22 essentially reserves the right to raise future affirmative defenses and incorporates those in Rule 8(c). Defendants withdraw this defense but otherwise reserves the right to move to amend as discovery requires in the future.

inability to demonstrate facts supporting piercing the corporate veil or causation as stated. Plaintiff cannot argue that these defenses are wholly irrelevant or unsupported, which should result in denial of the relief sought by Plaintiff. If the Court finds that these defenses do not qualify as "true" affirmative defenses, they should be treated as specific denials that are relevant and cannot be stricken. *Vance*, *supra*.

### D. Affirmative Defense 27 Should Not Be Stricken.

Affirmative Defense 27 asserts that "Plaintiff's Complaint should be dismissed due to improper reliance on confidential settlement communications." Plaintiff claims that this defense should be stricken because the Court previously ruled that Plaintiff may rely on confidential settlement communications. This is simply untrue. Pursuant to the March 5, 2020 order, this Court ruled that Rule 408 disputes should be decided as evidentiary matters in motions in limine, not in Rule 12(f) motions to dismiss. (Dkt. 37, p. 7). Stated different, the Court found that ruling on the issue was premature and would remain premature until the case reaches the trial stage. Thus, it is still a viable issue in dispute and the affirmative defense should not be stricken.

### CONCLUSION

For the foregoing reasons, Plaintiff's Partial Motion to Dismiss Counterclaims and Strike Affirmative Defenses should be denied. If any aspect of Plaintiff's Motion is to be granted, Defendants respectfully request leave to amend pursuant to FRCP 15(a)(2).

### REQUEST FOR ORAL ARGUMENT

Defendant respectfully requests oral argument on Plaintiff's Motion to Dismiss pursuant to L.R. 3.01(j). Defendant anticipates that 30 minutes of argument would be sufficient to assist the Court in addressing the issues.

Respectfully submitted,

By: s/Ryan L. Erdreich
    Ryan L. Erdreich, Esq. (Florida Bar No.: 65712)
    rerdreich@pmlegalfirm.com
    PISCIOTTI MALSCH
    30 Columbia Turnpike, Suite 205
    Florham Park, New Jersey 07932
    Telephone: (973) 245-8100
    Facsimile: (973) 245-8101

    *Attorneys for Defendants Matthew Sarac, Sarac Distributors LLC, and Yavex LLC*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on the 25th day of June 2020, I caused the foregoing to

be electronically filed with the Clerk of the Court and served on counsel for all parties via the Court's

Electronic Case Filing System.

Dated: June 25, 2020


By:  <u>s/ Ryan L. Erdreich</u>
Ryan L. Erdreich, Esq.
Florida Bar No.: 65712