UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ZSR PATLAYICI SANAYI A.S.,

       Plaintiff,

v.                                                                 Case No.:   2:19-cv-864-FtM-38MRM

SARAC DISTRIBUTORS LLC,
YAVEX LLC and MATTHEW
SARAC,

       Defendants.
_____/

## **OPINION AND ORDER**[1]

Before the Court is Plaintiff ZSR Patlayici Sanayi A.S.'s Motion to Dismiss Certain of Defendants' Amended Counterclaims and to Strike Certain of Defendants' Amended Affirmative Defenses[2] (Doc. 49), and Defendants Sarac Distributors LLC, Yavex LLC, and Matthew Sarac's (together "Sarac") Response in Opposition (Doc. 52). For the below reasons, the Motion to Dismiss is denied and the Motion to Strike is granted in part and denied in part.

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] Although Plaintiff improperly included two motions within one filing, because the Court is looking at the entirety of Doc. 47 (the Answer, Amended Affirmative Defenses, and Counterclaim), it will consider the hybrid filing in this instance. In the future, each motion must include only one basis for relief.

## BACKGROUND[3]

This is a breach of contract dispute between firearm distributors. Although Plaintiff moves to dismiss the Counterclaims (Doc. 47), it is helpful to the Court's discussion to recount the factual allegations of the Amended Complaint (Doc. 39). Sarac bought guns and ammo from a Turkish company called Yavaşçalar A.S. ("YAS"). But Sarac never paid off the balance he owed. In June 2016, Sarac and YAS made an oral agreement on the amount due (about $1.6 million). And they worked out a payment schedule for that sum, with Sarac to pay in full by the end of 2017. In exchange, YAS did not sue. While Sarac paid $300,000 under the agreement, he refused to pay the rest.

The June 2016 agreement is the basis of this case. ZSR is YAS' successor in interest to the agreement. And in the Amended Complaint, ZSR sues for (1) breach of contract; and (2) promissory estoppel. (Doc. 39).

Sarac says it didn't pay YAS because the "Yavex" brand ammunition YAS manufactured was shoddy, as in, not manufactured to industry quality standards, impacting its value, desirability, and salability in the United States. As a result, U.S. customers, including certain large ammunition manufacturers and retailers with whom Sarac regularly conducted business, elected not to purchase the ammunition, delayed their purchase, or required Sarac distributors to provide free samples for testing. Some even elected to cease conducting business with Sarac distributors. Sarac was then left with no choice but to sell the ammunition at a discount, causing them to suffer financial loss and harm to their reputation and crippling their efforts to pursue other business

---

[3] These are the facts pled in the Amended Complaint (Doc. 39) and Counterclaim (Doc. 47), which the Court accepts as true at this time. *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).

ventures. To make matters worse, YAS unlawfully shipped the Yavex brand ammunition in Yavex USA boxes to terroristic nations and groups, which was reported by various news agencies. Additionally, the owner and founder of YAS was arrested as part of an unsuccessful coup attempt in Turkey and his company was seized by the Turkish government. Because of this negative publicity, Sarac received backlash and further harm to its reputation and inability to sell its products.

On May 28, 2020, Sarac filed a three-count Amended Counterclaim, suing ZSR for (1) tortious interference with existing contracts; (2) tortious interference with advantageous business relationships; and (3) breach of implied warranty of merchantability in violation of Fla. Stat. § 672.314. (Doc. 47). Plaintiff moves to dismiss Counts 1 and 2 under Fed. Rs. Civ. P. 12(b)(2) and 12(b)(6) and strike certain affirmative defenses under Fed. R. Civ. P. 12(f) as insufficiently pled or redundant.

## DISCUSSION

### A. Rule 12(b)(6) Motion to Dismiss

#### 1. Standard

A motion to dismiss a counterclaim under Rule 12(b)(6) "is evaluated in the same manner as a motion to dismiss a complaint." *Whitney Info. Network, Inc. v. Gagnon*, 353 F. Supp. 2d 1208, 1210 (M.D. Fla. 2005) (citation omitted). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant can attack such a pleading under Rule 12(b)(6) by arguing it fails to state a claim upon which relief can be granted.

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*

3

*v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the complaint's factual content allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A party must plead more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted). And when deciding a motion to dismiss, the court must accept all factual allegations in the counterclaim as true and view them in a light most favorable to the counter-plaintiff. *Ashcroft*, 556 U.S. at 679.

### 2. Analysis

ZSR moves to dismiss the tortious interference counterclaims because they do not allege a specific contract or business relationship that ZSR allegedly interfered. The relationships alleged in Counts 1 and 2 that ZSR was aware of were: "contractual and/or business relationships between Defendants and ongoing relationships with purchasers of 'Yavex' brand ammunition, including certain large ammunition manufacturers and retailers in the U.S. to whom Defendants regularly sold ammunition and previously sold the 'Yavex' brand ammunition" (Doc. 47 at ¶ 104) and "ongoing advantageous business relationships with purchasers of ammunition in the United States, including certain large ammunition manufacturers and retailers" (Doc. 47 at ¶ 114). Further, under Count 2, Sarac alleges that ZSR's actions have caused "real and identifiable purchasers . . . to decline a sales contract, refuse to purchase the ammunition, and caused existing purchasers of Yavex ammunition to decline additional sales contracts." (Doc. 47 at ¶ 117).

To state a claim for tortious interference, a plaintiff must allege "(1) the existence of a business relationship [contract] that affords the plaintiff existing or prospective legal

rights; (2) the defendant's knowledge of the business relationship [contract]; (3) the defendant's intentional and unjustified interference with the relationship [contract]; and (4) damage to the plaintiff." *Int'l Sales & Serv., Inc. v. Austral Insulated Prod., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001).  ZSR asserts that Sarac fails on the first element.  Sarac responds that there are sufficient factual allegations to allow the Court to infer at the Motion to Dismiss stage that there exist business and contractual relationships that afford Sarac legal rights.

As to the first element, under Florida law[4] "[a] protected business relationship need not be evidenced by an enforceable contract." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994).  However, the business relationship must at least afford existing or prospective legal rights to the parties and embody "an actual and identifiable understanding" that the parties will do business together. *Id.* at 815.  Accordingly, although a business's relationship with a past customer is not a protected relationship, an ongoing relationship with a current customer or a potential relationship with a future customer may be protected.  See *id.* at 815 & n.1; *Magre v. Charles*, 729 So.2d 440, 444 (Fla. Dist. Ct. App. 1999).  A business's relationship with the general public is not protected; instead, the asserted relationship must be with an identifiable consumer. *Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1301 (M.D. Fla. 2017) (citing N. *Am. Van Lines, Inc. v. Ferguson Transp., Inc.*, 639 So. 2d 32, 33 (Fla. Dist. Ct. App. 1994), *aff'd*, 687 So. 2d 821 (Fla. 1996)).

---

[4] While sitting in diversity, the Court applies "the substantive law of the forum state, in this case Florida, alongside federal procedural law." *Global Quest, LLC v. Horizon Yachts Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017) (citation omitted).  The parties appear to agree Florida law applies.

Although a close call, drawing all reasonable inferences in Sarac's favor, the Court finds that the claims for tortious interference are plausible alleged as the factual content allows the Court to draw a reasonable inference that ZSR is liable for the alleged misconduct. Sarac alleges that ZSR interfered with ongoing relationships and contracts that ZSR had with identifiable purchasers, which the Court accepts as true. Of course, Sarac "may not recover, in a tortious interference with a business relationship tort action, damages where the 'relationship' is based on speculation regarding future sales to past customers." *Ethan Allen*, 647 So. 2d at 815. If discovery reveals that there are in fact no relationships with actual and identifiable consumers for which Sarac may recover damages, or they are otherwise speculative, the Court assumes that Sarac will abandon its tortious interference counterclaims. ZSR may also argue these points at the summary judgment stage. But the Motion to Dismiss is denied.

Alternatively, ZSR argues that those portions of Counts 1 and 2 premised on alleged defects in the ammunition should be dismissed under the economic loss rule. "The economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 401 (Fla. 2013). In Florida, the economic loss rule is applicable only to products liability cases. *Id. at 407*. Since the Counterclaim does not allege a products liability claim, the economic loss rule does not bar the claims.

### B. Rule 12(b)(2) Personal Jurisdiction Motion to Dismiss

ZSR next argues that the Court should dismiss the *portions* of the tortious interference counterclaims for lack of personal jurisdiction that are premised on

6

allegations of "illegal" arms shipments and the Turkish authorities' arrest of YAS' founder. ZSR argues that because these actions were not committed (and at most caused indirect harm) in Florida, the Court lacks personal jurisdiction. However, ZSR points the Court to no authority (let alone controlling authority) for the proposition that the Court can dismiss *portions* of a counterclaim for lack of personal jurisdiction. A personal jurisdiction analysis turns on whether the Court has personal jurisdiction over the *claims* asserted against a counter-defendant, not only portions of those claims. In sum, a motion to dismiss for lack of personal jurisdiction is not a basis for throwing out portions of the counterclaim that do not support personal jurisdiction.

### C. Motion to Strike Affirmative Defenses

ZSR moves to strike certain affirmative defenses under Fed. R. Civ. P. 12(f) as insufficiently pled or redundant. The Federal Rules of Civil Procedure require a defendant to "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c). "An affirmative defense is generally a defense that, if established, requires judgment for the defendant even if the plaintiff can prove his case by a preponderance of the evidence." *Wright v. Southland Corp.*, 187 F.3d 1287, 1303 (11th Cir. 1999). Pursuant to Rule 12(f), courts may strike "insufficient defense[s]" from a pleading upon a motion so requesting, or *sua sponte*. Fed. R. Civ. P. 12(f). Though motions to strike are permitted, they are considered a "drastic remedy, which is disfavored by the courts and will usually be denied" except under certain circumstances. *Thompson v. Kindred Nursing Centers E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002).

Compliance with Rule 8(c) requires a defendant to set forth "some facts establishing a nexus between the elements of an affirmative defense and the allegations

in the complaint," so as to provide the plaintiff fair notice of the grounds upon which the defense rests. *PK Studios, Inc. v. R.L.R. Invs., LLC*, No. 2:15-cv-389-FTM-99CM, 2016 WL 4529323, at *2 (M.D. Fla. Aug. 30, 2016) (quoting *Daley v. Scott*, No: 2:15-cv-269-FtM-29DNF, 2016 WL 3517697, at *3 (M.D. Fla. June 28, 2016)). Boilerplate pleading – that is, merely listing the name of the affirmative defense without providing any supporting facts – is insufficient to satisfy Rule 8(c), because it does not provide a plaintiff adequate grounds to rebut or properly litigate the defense. *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797 (11th Cir. 1989); *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988)).

### 1. Redundancy (Affirmative Defenses 3, 8, 12, 15, 24, 25, 26)

ZSR seeks to strike Affirmative Defenses 3, 8, 12, 15, 24, 25, and 26 because they are redundant of other affirmative defenses based on the same factual allegations. The Court has reviewed each of the affirmative defenses and finds that Affirmative Defenses 3, 8, 24, 25, and 26 will be stricken, but denies the request to strike Affirmative Defenses 12 and 15.

ZSR groups Affirmative Defenses 24-26[5] together, arguing that they are redundant of Affirmative Defense 23, each asserting that ZSR did not legally and properly obtain the rights and interest in YAS. Defendants agree to withdraw Affirmative Defenses 25, and the Court finds that Affirmative Defense 26 is redundant of 23. However, Affirmative Defense 24, which alleges that ZSR lacks standing to pursue this action, deserves further discussion.

---

[5] Defendants agree to withdraw Affirmative Defense 25.

Affirmative Defense 24 states in its entirety: "Plaintiff lacks standing to pursue this action.  Sarac assert that since ZSR did not legally and properly obtain rights to, and interest in, Yavascalar A.S., it lacks standing to bring this action."  (Doc. 47 at 32).  Lack of standing is not an affirmative defense, but rather is a matter implicating the court's subject matter jurisdiction over an action.  *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003).  Therefore, the Court will strike Affirmative Defense 24, but because standing "must be addressed as a threshold matter," the Court directs Sarac to file a motion to dismiss for lack of standing as soon as it has enough facts to support such a claim.  Right now, the Court only has a barebones allegation that ZSR improperly acquired YAS and its potential legal claims.

### 2. Sufficiency of the Pleading (Affirmative Defenses 5, 7, 9, 10, 15, and 17)

ZSR takes issue with the sufficiency of Affirmative Defenses 5, 7[6], 9, 10, 15, and 17, arguing that they contain inadequate factual support.  The Court has reviewed each of the affirmative defenses and finds that they are proper and adequately pled to place ZSR on notice of Defendants argument and position for each defense, with the exception of Affirmative Defense 9, which alleges that ZSR's claims are barred, in whole or in part, by its own defaults and breaches of contract, directly or through YAS.  The Court agrees that Sarac does not adequately allege what contracts ZSR allegedly defaulted on breached to put them on notice as to what Sarac will argue.  Therefore, the Court will strike Affirmative Defense 9.  However, the Court will not strike affirmative defenses 5, 7, 10, 15, and 17 for sufficiency of the pleading prior to the conclusion of discovery.

---

[6] Defendants agree to withdraw the *res judicata* portion of Affirmative Defense 7.

### 3. Denials (Affirmative Defenses 18-22)

ZSR argues that the Court should strike Affirmative Defenses 18-22 because they are not affirmative defenses, but instead, improper attacks on ZSR's prima facie case. These defenses are:

- No. 18 – Plaintiff cannot establish one or more elements of its claim for breach of contract and/or promissory estoppel.

- No. 19 – There is no evidence of any bases for piercing the corporate veil.

- No. 20 – Plaintiff cannot demonstrate any element of reasonable reliance by Plaintiff on Defendants' conduct that would indicate any basis for piercing the corporate veil.

- No. 21 – Plaintiff has failed to allege and cannot show any causal connection.

- No. 22 – Plaintiff has failed to establish that Defendants made a promise that was clear and unambiguous in its terms, and reasonably relied upon by Plaintiff, to supports its promissory estoppel claim.[7]

The Court agrees that these are not proper affirmative defense but are more akin to a denial of ZSR's right to proceed with the litigation of this case and a denial that ZSR suffered any damages. Affirmative Defenses 18-21 are therefore stricken. *See Wright, 187 F.3d at 1303* ("An affirmative defense is generally a defense that, if established, requires judgment for the defendant even if the plaintiff can prove his case by a preponderance of the evidence.").

### 4. Affirmative Defense 27

Finally, ZSR moves to strike Affirmative Defense 27, which asserts that "Plaintiff's Complaint should be dismissed due to improper reliance on confidential settlement communications" because the Court already rejects this argument in its previous Opinion

---

[7] Defendants agree to withdraw Affirmative Defense 22.

and Order (Doc. 37). However, this is a "general" defense properly raised in a Rule 12(b) motion, not "affirmative" defenses to be asserted in a responsive pleading. *See In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 & n.9 (11th Cir. 1988). Accordingly, the Court grants ZSR's request to strike this defense.

Accordingly, it is now

**ORDERED:**

Plaintiff ZSR Patlayici Sanayi A.S.'s Motion to Dismiss Certain of Defendants' Amended Counterclaims and to Strike Certain of Defendants' Amended Affirmative Defenses (Doc. 49) is **GRANTED IN PART AND DENIED IN PART**.

1. The Motion to Dismiss for Failure to State a Claim and Lack of Personal Jurisdiction is **DENIED**.
2. The Motion to Strike is **GRANTED IN PART AND DENIED IN PART**. Affirmative Defenses 3, 8, 9, and 18-27 are **stricken**. Affirmative Defenses 22, 25, and the *res judicata* portion of Affirmative Defense 7, are **deemed withdrawn**.

**DONE** and **ORDERED** in Fort Myers, Florida this 10th day of July, 2020.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record